NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0219n.06

No. 13-5404

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 19, 2015
DEBORAH S. HUNT, Clerk

RANDALL SCOTT WALDMAN; R.W. LIMITED, )
CO.; STONE MACHINE AND FABRICATION, )
LLC; INTEGRITY MANUFACTURING, LLC, )
                                           )
       Appellants, )
                                           )
v. )
                                           )
RONALD B. STONE, )
                                           )
       Appellee. )

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY

Before: KETHLEDGE and STRANCH, Circuit Judges; GWIN, District Judge.[*]

KETHLEDGE, Circuit Judge. De novo review is not a second trial. Five years ago, the bankruptcy court conducted a trial after which it found that Randall Waldman had defrauded his business partner, Ron Stone. We vacated that decision on constitutional grounds, instructing the bankruptcy court to recast its decision as proposed findings of fact and conclusions of law, and instructing the district court to review those findings and conclusions de novo. Both courts followed those instructions on remand; the district court then entered judgment against Waldman for approximately $3 million. In this appeal, Waldman principally argues that the district court was required to receive additional evidence when performing its de novo review. We reject that argument. Of Waldman's many other arguments, two have merit: that the district court erred

---

[*] The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

when it calculated actual damages, and that the district court should have allocated fault between Waldman and Atherton. With those two exceptions, we affirm.

I.

Stone's business, Stone Tool and Machine, began to have serious cash-flow problems in 2003. The next year, Fifth Third Bank sued Stone for over $1 million in unpaid debts. Stone contacted his attorney, Bruce Atherton, who introduced him to Waldman. What Stone did not know was that Atherton himself owed Waldman tens of thousands of dollars, and that Atherton planned to help Waldman exploit Stone to settle that debt. Waldman told Stone that, if Stone would transfer to Waldman all of Stone Tool's assets, Waldman would pay off Stone's debts, guarantee him a salary for five years, and give him a 40% ownership stake in Waldman's new company, Stone Machine and Fabrication.

But Waldman tricked Stone into signing a very different agreement. On May 20, 2005, Atherton called Stone and urged him to come to Waldman's office within 15 minutes. When Stone arrived, Waldman said that Stone needed to sign a contract immediately. If Stone even took time to read the contract, Waldman said, the bank would foreclose. Atherton and Waldman assured Stone that the documents reflected the terms of their deal, and Waldman reiterated his promise to pay off Stone's debts. In reality, however, the contract transferred all of Stone Tool's assets to Waldman, and gave Stone only a job with Stone Machine in return. Stone signed the contract. Waldman then used Stone Tool's assets to buy all of Stone's debts, which Waldman had no obligation to forgive. Thus, in effect, Stone gave away his old company, received no equity in the new company, and owed the same amount of debt—only now to Waldman instead of to the bank.

For more than a year thereafter, Stone continued to work for Waldman at Stone Machine. During that time, Stone repeatedly asked to see the contract that he had signed, but Waldman and Atherton refused to show it to him, though Waldman assured Stone that he owned 40% of Stone Machine. Stone also asked Waldman to pay Stone's debts as promised, but Waldman never did so. Only in October 2006—after Atherton's assistant finally gave Stone a copy of the contract—did Stone realize that he had been duped. He confronted Waldman (leading to a fist-fight) and left the company shortly thereafter. Two months later, Waldman filed a notice of garnishment against Stone for the unpaid debts, forcing him into bankruptcy.

In the bankruptcy court, Stone sought a discharge of the unpaid debts, and alleged that Waldman had defrauded him. Stone asked for a judgment that would require Waldman to satisfy Stone's debts, give Stone the value of a 40% stake in Stone Machine, and pay punitive damages. The bankruptcy court held a multi-day trial on Stone's claims; afterwards, the court made detailed findings that Waldman had defrauded Stone. The court therefore disallowed Waldman's claims and awarded Stone approximately $3 million. The district court affirmed.

Waldman appealed to this Court, arguing among other things that the bankruptcy court acted contrary to Article III of the Constitution when it entered a final judgment in favor of Stone on his fraud claims. We agreed with that argument, vacated the judgment, and remanded. *Waldman v. Stone*, 698 F.3d 910, 921-22 (6th Cir. 2012). We instructed the bankruptcy court and the district court to exercise their respective authorities pursuant to 28 U.S.C § 157(c)(1). Under that provision, the bankruptcy court may "hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," and "submit proposed findings of fact and conclusions of law to the district court." *Id.* The district court must then "consider[] the

bankruptcy judge's proposed findings and conclusions and . . . review[] de novo those matters to which any party has timely and specifically objected." *Id.*

On remand, the bankruptcy court recast its decision as proposed findings of fact and conclusions of law. After briefing by both parties, the district court then adopted some of those findings and conclusions, rejected others, and entered its own judgment against Waldman, three of Waldman's companies, and Atherton in the amount of $3,074,374, which included $1,074,374 for compensatory damages, and $2,000,000 for punitive damages. This appeal followed.

II.

A.

Waldman primarily argues that the district court failed to review de novo the bankruptcy court's proposed findings of fact and conclusions of law. We review de novo whether the district court did so. *See generally United States v. Levy*, 904 F.2d 1026, 1029 (6th Cir. 1990).

De novo review means to review without giving "deference . . . or any presumption of correctness" to the lower court. *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990). The district court hewed to that standard here: it acknowledged its obligation to "review de novo the bankruptcy record" and expressly refused to afford the bankruptcy court's findings and conclusions a "presumption of validity." Dist. Ct. Op. at 1, 4.

For two reasons, however, Waldman argues that the district court was also required to take additional evidence as part of its de novo review. The first we reject summarily: Waldman contends that the district court was "compelled" to receive additional evidence "by the body of Article III case law." But he cites no such "case law," and we are aware of none.

Second, Waldman contends that Federal Rule of Bankruptcy Procedure 9033(d) required the district court to receive additional evidence. That Rule provides in full:

> The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.

Fed. R. Bank. P. 9033(d). In Waldman's view, the Rule's first sentence compels the district court to take "additional evidence" as to "any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made[.]" *Id.*

But the Rule's second sentence flatly contradicts Waldman's reading: the sentence says that "[t]he district judge *may* . . . receive additional evidence" in connection with the district court's review of the bankruptcy court's proposed findings and conclusions, not that the district court must do so. (Emphasis added.) Waldman's reading changes that "may" to "must," and thus rewrites the Rule's plain terms. We decline to read the Rule that way. *See Deutsche Bank Nat'l Trust Co. v. Tucker*, 621 F.3d 460, 464 (6th Cir. 2010).

Waldman also misreads the Rule's first sentence, which states at its outset what the district court must do: "make a de novo review." After some intervening language, the Rule then specifies what, exactly, the court must review: "any portion of the bankruptcy judge's findings of fact or conclusions of law to which specified written objection has been made." (Of course, Article III might separately impose on the district court a duty to review de novo all of the bankruptcy court's proposed findings and conclusions. *See generally Waldman I*, 698 F.3d at 917-22.) In the intervening language, the Rule merely identifies two methods by which the court may perform that review: either "upon the record" or "after additional evidence." Which method to employ, the next sentence makes clear, is up to the district court. Thus, Waldman's reading of the Rule is meritless.

B.

The parties agree that Kentucky law applies to Stone's claims for fraud. Waldman argues that the district court misapplied that law in three respects. First, he argues that the district court erred in its damages calculation. We review that calculation for clear error. *See Huss v. King Co.*, 338 F.3d 647, 652 (6th Cir. 2003). Kentucky follows the "benefit of the bargain rule" in calculating damages for fraud. *See Dempsey v. Marshall*, 344 S.W.2d 606, 607 (Ky. Ct. App. 1961). Under that rule, a court awards damages necessary to place the injured party "in the same position he would have occupied had he not been defrauded." *Sanford Const. Co. v. S & H Contractors, Inc.*, 443 S.W.2d 227, 239 (Ky. 1969).

Here, Stone promised to transfer ownership of Stone Tool to Waldman. In return, Waldman promised to pay off Stone's debts, give him a job, and give him a 40% stake in Waldman's new business, Stone Machine. Thus, absent the fraud, Stone would have lost Stone Tool but gained a job, the amount of his unpaid debts, and a 40% stake in Stone Machine. In fact, however, Stone lost Stone Tool and received nothing in return except the job. To place Stone "in the same position he would have occupied had he not been defrauded," therefore, the district court should have awarded him the amount of his debts plus the value of a 40% stake in Stone Machine.

The amount of Stone's debts is undisputed: $121,044. And Stone's own damages expert, Andrew Green, provided the only testimony as to the value of a 40% stake in Stone Machine: $529,732. BR 244, Tr. Vol. 4 at 24:17. Thus, to give Stone the benefit of his bargain, the district court should have awarded him $650,776.

But the court awarded Stone $1,074,374 instead. That amount correctly included $121,044 for Stone's debts, but included an additional $953,330 as well. That additional figure

reflected, among other things, 100% of Stone Tool's value. But Waldman never promised to pay Stone the value of Stone Tool; instead, Waldman promised to pay off Stone's debts and give him a stake in Stone Machine, in return for Stone's transfer of Stone Tool to Waldman. Thus, even if Waldman had kept his promises, Stone would not have kept the value of Stone Tool. Stone therefore was not entitled to its value as damages, which means his compensatory damages totaled only $650,776.

Second, Waldman challenges the district court's punitive-damages award, arguing that a Kentucky statute, K.R.S. 411.186, required the district court to discuss certain statutory factors before awarding punitive damages to Stone. But Waldman did not make that argument to the district court. The argument is therefore waived. *See In re Klein Sleep Prods., Inc*., 78 F.3d 18, 29 (2d Cir. 1996).

Third, Waldman argues that the district court erred by requiring him to pay for all of Stone's damages, rather than apportioning them between Waldman and Atherton. We review de novo the district court's interpretation of Kentucky law, and "anticipate how the relevant state's highest court would rule in the case." *In re Dow Corning Corp*., 419 F.3d 543, 549 (6th Cir. 2005).

In support of his argument, Waldman relies on a Kentucky statute, K.R.S. 411.182, which provides in relevant part:

> In *all* tort actions, including products liability actions . . . the [factfinder] shall make fact findings indicating the percentage of the total fault of all the parties to each claim that is allocated to each [defendant] . . . [and] determine the award of damages . . . in accordance with [those] findings.

*Id* (emphasis added). On Waldman's reading of this provision, he is liable for the full amount of Stone's damages only if the court determined that Waldman was 100% at fault for them.

The district court held that K.R.S. 411.182 does not apply here because, the court said, the "substantive law" of civil conspiracy allows a plaintiff to recover from one conspirator all of the losses that the plaintiff sustained as a result of the conspiracy. Dist. Ct. Op. at 17 (citing a treatise). But that same argument was rejected by the Kentucky Court of Appeals, *James Med. Equip., Inc. v. Allen*, 2006 WL 2788435 at *7 (Ky. Ct. App. Sept. 29, 2006), whose opinions we must follow unless we think the Kentucky Supreme Court would decide the case differently. *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001).

We see no reason to think that here. At one time, Kentucky indeed had a common-law rule that co-conspirators are each liable for all of the damages that result from the conspiracy. But the Kentucky legislature was free to abrogate that rule, which it did by enacting K.R.S. 411.182. That statute provides that a court must apportion liability in "*all* tort actions." (emphasis added). And a claim for civil conspiracy to defraud is a tort action. *James v. Wilson*, 95 S.W.3d 875, 898 (Ky. Ct. App. 2002). Thus, under K.R.S. 411.182, the district court was required to apportion liability for Stone's damages.

Stone suggests that this apportionment is impossible here because the district court found that Waldman and Atherton were "equally to blame" for Stone's damages. But we doubt that the district court's statement expressed a quantitative analysis; and thus we leave it to the district court to allocate Stone's damages in the first instance on remand. We likewise leave it to the district court to determine whether K.R.S. 411.182 also applies to Stone's award of punitive damages—an issue that neither party briefed on appeal.

## C.

We make shorter work of Waldman's remaining arguments. He argues that the district court should have stricken from the record the deposition of Atherton's secretary. But "[a]n

erroneous evidentiary ruling amounts to reversible error . . . only if it affected the outcome of the [case]." *Cummins v. BIC USA, Inc.*, 727 F.3d 506, 510 (6th Cir. 2013). Here, the district court stated that the deposition did not affect the outcome, Dist. Ct. Op. at 5 n.6, and Waldman gives us no reason to think otherwise. So this argument fails.

Next, Waldman argues that the district court erred by holding that he owed a fiduciary duty to Stone. The court so held for two reasons: because Waldman exercised "undue influence" over Stone, and because Waldman and Stone were partners. Dist. Ct. Op. at 8-9, 9 n.9. On appeal, Waldman disputes that Waldman exercised undue influence, but not that Waldman and Stone were partners. But under Kentucky law, partners owe each other a fiduciary duty. *Lach v. Man O'War, LLC*, 256 S.W.3d 563, 569 (Ky. 2008). That Stone and Waldman were partners, therefore, is reason enough to hold that Waldman owed Stone a fiduciary duty.

Waldman also argues that the district court erred by finding that he committed fraud. We have already rejected that argument. *See Waldman I*, 698 F.3d at 922. Finally, Waldman does not explain how his remaining arguments provide grounds on which to reverse the district court. So we need not address them.

\* \* \*

The district court's judgment is affirmed, except that we reduce the amount of Stone's compensatory damages from $1,074,374 to $650,776, and remand the case with instructions to apportion Stone's damages pursuant to K.R.S. 411.182.