NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0652n.06

No. 16-5160

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 06, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| RANDALL SCOTT WALDMAN, et al., | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| RONALD B. STONE, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| Appellee. | ) | |
| | ) | |
| | ) | |

Before: McKEAGUE, KETHLEDGE, STRANCH, Circuit Judges.

KETHLEDGE, Circuit Judge. This case is before us a third time. We have already recited the relevant facts in the first two appeals, but the short version is that in 2005 Randall Waldman and a now-disbarred attorney, Bruce Atherton, defrauded Ronald Stone of most of the value of his tool-manufacturing business. *See Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012) (*Waldman I*); *see also Waldman v. Stone*, 599 F. App'x 569 (6th Cir. 2015) (*Waldman II*). Stone later filed for bankruptcy; his estate brought fraud claims against Waldman and Atherton. The bankruptcy court entered a $3 million judgment in favor of Stone and against Waldman and Atherton jointly and severally. Waldman appealed to the district court, which affirmed, and then to us. Although we held in *Waldman I* that there was ample evidence that Waldman and Atherton had defrauded Stone, we vacated the bankruptcy court's judgment on Article III grounds unrelated to the merits of Stone's claims. On remand, the district court again found (this

time de novo) that Waldman and Atherton had defrauded Stone. The district court entered a judgment against them jointly and severally for over $1 million in compensatory damages and $2 million in punitive damages. Again Waldman appealed to this court. Again we affirmed that Waldman and Atherton had committed fraud, but we reduced the amount of compensatory damages to $650,776 and vacated the court's finding of joint and several liability. *Waldman II*, 599 F. App'x at 571-72. We remanded for the limited purpose of apportioning liability among the parties for Stone's compensatory damages and, if appropriate, for his punitive damages. *Id.* On remand, the district court found Waldman and Atherton each 50% responsible (and Stone not responsible at all) for Stone's compensatory and punitive damages. The court also reduced the amount of punitive damages from $2 million to $1.2 million to retain the 2:1 ratio of punitive to compensatory damages in its earlier judgment.

Waldman now appeals yet again, challenging not only the district court's apportionment per our limited remand, but also its decision to impose punitive damages and its use of a 2:1 ratio of punitive to compensatory damages. With the exception of Waldman's challenges to the apportionment determination, however, those challenges (subject to Waldman's ability to show otherwise, as discussed below) are legally frivolous. As an initial matter, the latter two challenges—to the award of punitive damages and to the ratio—are patently beyond the scope of our limited remand and therefore out of bounds in this appeal. *See United States v. O'Dell*, 320 F.3d 674, 679 (6th Cir. 2003). Moreover, Waldman waived both of these challenges in *Waldman II*. Waldman waived his challenge to the 2:1 ratio because he had obtained a decision on that issue in the district court during that round but did not raise the issue in his opening brief in our court. (He raised it only in his reply.) *See generally United States v. Hendrickson*, 822 F.3d 812, 830 (6th Cir. 2016). And in *Waldman II* we expressly held that Waldman's

challenge to the punitive award—based on precisely the same Kentucky statute he invokes now, namely K.R.S. 411.186—was "waived." 599 F. App'x at 574. Both of these challenges are therefore doubly out of bounds here. *See O'Dell*, 320 F.3d at 679 (describing both the "limited-remand rule" and the "waiver rule").

That leaves the only two arguments that are properly before us, both of which concern the district court's finding (per the limited remand) that Waldman and Atherton each bore 50% responsibility for Stone's damages. We review that finding for clear error. *See* Fed. R. Civ. P. 52(a)(6); *Vill. of Milford v. K-H Holding Corp.*, 390 F.3d 926, 936 (6th Cir. 2004). Waldman's first argument is that the district court should have apportioned 100% of the responsibility for Stone's damages to Atherton and 0% to Waldman himself. In making that argument Waldman comes perilously close to arguing for a third time that he did not commit fraud at all: we rejected that argument on the merits in *Waldman I*, and when Waldman nonetheless made the same argument in *Waldman II*, we rejected it on the ground that we had "already rejected" it in *Waldman I*. *Waldman II*, 599 F. App'x at 575. As for the 50/50 allocation itself, the district court explained that "both Atherton and Waldman played essential roles in perpetrating fraud upon Stone." Op. at 9. Specifically, the court noted, Atherton "introduce[d] Stone to Waldman" and "completed all of the legal steps to transfer [Stone's business] to Waldman[.]" *Id.* But "Waldman concealed the fact that he was not paying off" Stone's debts as part of the fraudulent deal into which Waldman himself entered with Stone, and Waldman "cultivated a false image in Stone's mind" of Stone's interest in the business after the deal was closed. *Id*. at 8. And "[w]hile Atherton violated his ethical duties as a lawyer to Stone, his client, Waldman violated his fiduciary duties to Stone, his business partner." *Id*. at 9. We see nothing clearly erroneous about that determination of respective fault. Waldman contends

further that Atherton should bear all the fault because Atherton was a "but-for cause" of Stone's damages; but if three rounds of litigation in this case establish anything, it is that Waldman was a but-for cause of them as well.

Waldman's final argument is that Stone bears some of the fault for his damages because he was slow to uncover the fraud. One answer to that argument is that Waldman himself did everything in his power to prevent Stone from uncovering the fraud. Another is the district court's observation that "Stone was neither a sophisticated party nor was he provided with a meaningful opportunity to review the closing documents." *Id*. at 10. Waldman's arguments are meritless.

To summarize: Waldman defrauded Stone more than a decade ago, and since then has subjected Stone to three rounds of litigation in the district court and in this court as Stone sought a remedy for the fraud. A handful of Waldman's arguments (among the baskets-full he has presented to us and the district court) have been meritorious; but Waldman has repeatedly presented arguments that we have already rejected or for which he presented no support. *See, e.g.*, *Waldman II*, 599 F. App'x at 574. Stone has borne the expense of responding to all those arguments. And in this appeal, as explained above, Waldman has presented arguments that Waldman or his counsel (subject to their right to attempt to show otherwise) should have known not to present. We therefore invite Stone to file a motion for his attorneys' fees, costs, and expenses arising from any frivolous arguments that Waldman made in this appeal.

The district court's judgment is affirmed.