RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0029p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

FRANK RICHARDSON,

*Defendant-Appellant*.

Nos. 17-2157/2183

On Remand from the Supreme Court of the United States.
United States District Court for the Eastern District of Michigan at Ann Arbor.
No. 5:11-cr-20444-1—John Corbett O'Meara, District Judge.

Decided and Filed:  January 27, 2020

Before:  COOK, STRANCH, and NALBANDIAN, Circuit Judges.

_____

**COUNSEL**

**ON SUPPLEMENTAL BRIEF:**  Michael R. Dezsi, LAW OFFICE OF MICHAEL R. DEZSI, PLLC, Detroit, Michigan, for Appellant.  Shane Cralle, UNITED STATES ATTORNEYS OFFICE, Detroit, Michigan, for Appellee.

_____

**OPINION**

_____

NALBANDIAN, Circuit Judge.  We must give credit when it is due.  Twice, Frank Richardson has successfully persuaded the Supreme Court to vacate our judgments affirming his conviction and sentence for a string of armed robberies in Detroit.  Both times, the Supreme Court remanded Richardson's case to this court and—though not reversing our decisions on the merits—

instructed us to consider whether an intervening Supreme Court decision or new legislation affected his conviction under 18 U.S.C. § 924(c).

After we first affirmed Richardson's conviction and sentence, the Supreme Court asked us to consider whether its decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015) affected Richardson's conviction under § 924(c). Richardson argued that the clear import of *Johnson*, which held that the Armed Career Criminal Act's residual clause is unconstitutionally vague, was that § 924(c)'s similarly (but not identically) worded residual clause was also void for vagueness. But we held that Richardson's underlying conduct—aiding and abetting Hobbs Act robbery— satisfied § 924(c)'s elements clause, a separate basis for conviction, and thus affirmed his conviction and sentence.

Richardson petitioned for certiorari again, and while his petition was pending, the First Step Act of 2018 became law. That Act makes several changes to sentencing law, including a major change in the way courts sentence repeat offenders under § 924(c). So Richardson filed a supplemental brief in support of his certiorari petition, and in turn, the Supreme Court granted Richardson's petition, vacated our judgment, and remanded the case to this court with instructions to consider whether the Act affects Richardson.

We begin by reissuing our earlier decision (with a few non-substantive changes) affirming Richardson's conviction. As to the most recent remand, we hold that Richardson cannot benefit from the First Step Act because the district court resentenced him more than one year before the Act became law. As a result, we also affirm Richardson's sentence.

## I.

Frank Richardson participated in a series of armed robberies of electronics stores in and around Detroit, Michigan, between February and May 2010. *United States v. Richardson*, 793 F.3d 612, 618 (6th Cir. 2015), *judgment vacated*, 136 S. Ct. 1157 (2016) ("*Richardson I*"). Richardson planned each heist and served as a lookout, although he never entered a store while a robbery occurred. *Id.* Even so, at least one robber used a gun during each robbery. *Id.* Law enforcement apprehended Richardson shortly after he participated in the fifth and final robbery. *Id.* at 620.

In June 2013, a jury convicted Richardson on five counts of aiding and abetting Hobbs Act robbery under 18 U.S.C. § 1951, five counts of aiding and abetting the use of a firearm during and in relation to a crime of violence under § 924(c), and one count of being a felon in possession of a firearm under 18 U.S.C. § 922(g). The district court sentenced Richardson to 1,494 months in prison, and we affirmed Richardson's conviction and sentence on appeal. *Id.* at 617.

While Richardson's appeal was pending, the Supreme Court decided *Johnson*, holding that the Armed Career Criminal Act's residual clause is unconstitutionally vague. 135 S. Ct. at 2563. Although the jury did not convict Richardson under ACCA, he petitioned for certiorari, arguing that § 924(c)'s residual clause—though not identical to ACCA's residual clause—is similarly vague. The Court granted that petition, vacated our judgment, and remanded the case "for further consideration in light of *Johnson v. United States*." *Richardson v. United States*, 136 S. Ct. 1157, 1157 (2016). In turn, we issued an order that vacated Richardson's sentence and remanded the case to the district court "for reconsideration of Richardson's sentence in light of *Johnson v. United States*." *United States v. Richardson*, Nos. 13-2655, 13-2656, at *2 (6th Cir. Aug. 29, 2016) ("*Richardson Remand*").

In September 2017, the district court held a resentencing hearing and reinstated Richardson's original sentence. Richardson appealed, and in October 2018, we issued another opinion affirming the district court's reinstatement of his original sentence. *United States v. Richardson*, 906 F.3d 417, 421 (6th Cir. 2018), *judgment vacated*, 139 S. Ct. 2713 (2019) ("*Richardson II*").

Once more, Richardson petitioned the Court for certiorari, and while that petition was pending, Congress passed the First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194 (2018). Because one part of the First Step Act changes how courts sentence defendants convicted of multiple counts under § 924(c), Richardson filed a supplemental brief in support of his petition, claiming he is entitled to relief under the Act. Again, the Court granted Richardson's petition, vacated our judgment, and remanded the case for this court "to consider the First Step Act of 2018." *Richardson v. United States*, 139 S. Ct. 2713, 2713–14 (2019).

## II.

### A.

We begin with the first Supreme Court remand from 2016, which asked us to consider Richardson's § 924(c) conviction given *Johnson*. In response to that order, we remanded the case, too, instructing the district court to examine whether *Johnson* affected Richardson's sentence under § 924(c).

The parties disagree about the scope of our remand and—specifically—whether we opened the door for Richardson to raise other issues related to his conviction. Richardson contends that we issued a general remand, which would allow us to consider his allegations of error from the original trial as well as his *Johnson*-related arguments. The Government, by contrast, asserts that our remand was limited and thus precludes the court from considering any issue unrelated to *Johnson* and its effect on Richardson's sentence. We interpret our remand de novo, *see, e.g.*, *United States v. Moore*, 131 F.3d 595, 598 (6th Cir. 1997), and underscore that the scope of our remand binds the district court. *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999). Indeed, a district court is "without jurisdiction to modify or change the mandate." *Tapco Prods. Co. v. Van Mark Prods. Corp.*, 466 F.2d 109, 110 (6th Cir. 1972).

Remands can be limited or general, although courts operate under the rebuttable presumption that a remand is general. *United States v. Woodside*, 895 F.3d 894, 899 (6th Cir. 2018). A general remand "permits the district court to redo the entire sentencing process, including considering new evidence and issues." *United States v. McFalls*, 675 F.3d 599, 604 (6th Cir. 2012). By contrast, a limited remand "explicitly outline[s] the issues to be addressed by the district court and create[s] a narrow framework within which the district court must operate." *Campbell*, 168 F.3d at 265.

To overcome the presumption that a remand is general, we must "convey clearly our intent to limit the scope of the district court's review with language that is in effect, unmistakable." *Woodside*, 895 F.3d at 899 (internal alterations, citations, and quotation marks omitted). But the court need not use magic words to limit the scope of its remand. *Id.* at 900. For that matter, it makes no difference where the limiting language appears in the order. *Id.* Language narrowing

the scope of the remand "may be found 'anywhere in an opinion or order, including a designated paragraph or section, or certain key identifiable language.'" *Id.* (quoting *United States v. Orlando*, 363 F.3d 596, 601 (6th Cir. 2004)). And context is also instructive: We have repeatedly held that the court should "consider the specific language used in the context of the entire opinion or order" when interpreting the scope of the remand. *Campbell*, 168 F.3d at 267–68; *see also United States v. Patterson*, 878 F.3d 215, 217 (6th Cir. 2017) (explaining that the court must look to "the broader context of the opinion" when interpreting the remand).

Our order's plain language makes clear that we remanded the matter only to determine whether *Johnson* affects Richardson's sentence under § 924(c). The order's penultimate sentence explains the basis for the remand: "Because any *Johnson*-based challenges to his sentence that Richardson may have are entirely novel, it is appropriate to allow the district court to consider *those challenges* in the first instance." *Richardson Remand* at *2 (emphasis added). The order concludes, "Richardson's sentence is hereby VACATED, and we REMAND to the district court for reconsideration of Richardson's sentence in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015)." *Id.* The order does not open the door to *any* argument about Richardson's sentence but narrows the district court's review to *Johnson*-related arguments that Richardson necessarily could not have raised at trial or on his first appeal to this court.

Context also bolsters the conclusion that we issued a limited remand. Our order acknowledges that Richardson raised several issues on his first appeal, stating, "we issued an opinion and judgment rejecting those arguments and affirming Richardson's conviction and sentence in full." *Id.* at *1. The only intervening event between *Richardson I* and our 2016 order was the Supreme Court's decision in *Johnson*. But that decision does not affect any of the alleged errors related to Richardson's indictment and the trial court's jury instructions. And for that reason, our order does not identify any of those alleged errors as issues for consideration on remand.

In sum, our order foreclosed the district court from considering any issue unrelated to *Johnson*'s effect on Richardson's conviction and sentence under § 924(c).

**B.**

Richardson advances three arguments related to his conviction and sentence under § 924(c) that are unrelated to the Supreme Court's decision in *Johnson*.  He argues that the trial court (1) erred in instructing the jury on the necessary elements to convict under § 924(c); (2) erroneously instructed the jury about the necessary predicate offenses underlying the § 924(c) counts; and (3) added two years to his sentence under § 924(c) for having "brandished" a firearm, even though he was charged with the lesser "use-and-carry" offense.  These errors are not properly before this court.

First, as we just explained, our order limited the district court's inquiry to determining whether § 924(c) is constitutional given *Johnson*.  When we issue a limited remand, the district court is "bound to the scope of [that] remand" and lacks "authority to expand its inquiry beyond the matters forming the basis of the appellate court's remand."  *Campbell*, 168 F.3d at 265.  Because Richardson's allegations of error fall outside the scope of our limited remand, the district court appropriately declined to consider those arguments.

Richardson faces a second insurmountable hurdle independent of the scope of our remand: He forfeited those arguments by not raising them on his first appeal to this court.  We addressed a similar situation in *Patterson*, holding that the criminal defendant could not raise new arguments on his second appeal after he failed to raise them on his first appeal.  878 F.3d at 218.  In that case, the defendant appealed his criminal conviction to this court, and the government cross-appealed, contending that the district court erred by not treating the defendant's prior state-court convictions as crimes of violence under ACCA.  *Id.* at 217.  We affirmed the conviction and agreed with the government that the defendant qualified as an armed career criminal.  *Id.*  So we issued a limited remand, ordering the district court to resentence the defendant under ACCA.  *Id.*  But on remand, the defendant tried to relitigate his classification as an armed career criminal and raised new arguments that he never presented on his first appeal.  *Id.*  The district court declined to consider those arguments, and we affirmed that decision.  We held first, as here, that the remand was limited.  *Id.* at 218.  And we noted that the defendant's failure to raise those arguments on his first appeal posed "another problem, separate and apart from the scope of our remand."  *Id.*  "Where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule

generally prohibits the district court from reopening the issue on remand." *Id.* (alteration omitted) (quoting *United States v. O'Dell*, 320 F.3d 674, 679 (6th Cir. 2003)).  Because Richardson never presented his additional arguments on his first trip to the Sixth Circuit, his argument is "'doubly out of bounds' now." *Id.* (quoting *Waldman v. Stone*, 665 F. App'x 432, 434 (6th Cir. 2016)).

As a last resort, Richardson asks this court to consider his arguments under the framework of an ineffective assistance of counsel claim.  But again, because Richardson's ineffective assistance of counsel argument falls outside the scope of our limited remand, he cannot raise the argument on this appeal.  In addition, courts almost always address ineffective assistance of counsel arguments when the defendant brings a post-conviction motion to vacate under 28 U.S.C. § 2255, rather than on direct appeal.  *United States v. Franklin*, 415 F.3d 537, 555 (6th Cir. 2005).  There is good reason to adhere to that practice here: We need a sufficiently developed record to review Richardson's ineffective assistance of counsel claim.  *Id.*  Without one, it is difficult for us to determine whether Richardson's trial counsel was, in fact, ineffective.  *United States v. Bradley*, 400 F.3d 459, 462 (6th Cir. 2005).  As a result, we decline to reach Richardson's alleged errors through his ineffective assistance of counsel claim.

## C.

Next, we consider the central issue properly before us from the Supreme Court's first remand:  whether the Court's decision in *Johnson* has any effect on Richardson's sentence.  ACCA—at issue in *Johnson*—creates no standalone criminal offense.  Rather, it imposes a more severe sentence on a defendant convicted of being a felon in possession of a firearm—but only if the defendant has three or more prior convictions for a violent felony or a serious drug offense.  18 U.S.C. § 924(e)(1).  ACCA provides several definitions of the term "violent felony," including a catchall definition within the residual clause at § 924(e)(2)(B)(ii).  Any crime punishable by imprisonment for a term exceeding one year that "otherwise involves conduct that presents a serious potential risk of physical injury to another" is a violent felony under ACCA's residual clause.  *Id.* § 924(e)(2)(B)(ii).

The Supreme Court held in *Johnson* that ACCA's residual clause is unconstitutionally vague.  135 S. Ct. at 2563.  Richardson, however, did not receive a sentence enhancement under

ACCA and does not challenge his conviction on one count of being a felon in possession of a firearm. Instead, he appeals his conviction under a different statute, § 924(c), which "ma[kes] it a separate offense to use or possess a firearm in connection with a violent or drug trafficking crime." *Dean v. United States*, 137 S. Ct. 1170, 1174 (2017). Like ACCA, § 924(c) includes a residual clause that defines "crime of violence" as any crime punishable by imprisonment for a term of more than one year that "involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." § 924(c)(3)(B). Although Richardson acknowledges that § 924(c)'s residual clause is not identical to ACCA's residual clause, he argues that the differences between those two clauses are minor and that the Supreme Court's reasoning in *Johnson* applies to § 924(c)'s residual clause, too.

When we decided *Richardson II*, the Supreme Court had not yet ruled that § 924(c)'s residual clause is unconstitutionally vague. But in a published decision after *Johnson* but before *Richardson II*, we held that § 924(c)'s residual clause is constitutionally sound, noting that the clause "is considerably narrower than the statute invalidated by the Court in *Johnson*." *United States v. Taylor*, 814 F.3d 340, 375 (6th Cir. 2016). Thus, *Taylor* foreclosed Richardson's argument that § 924(c)'s residual clause is void for vagueness.

After our decision in *Richardson II*, the Supreme Court addressed the validity of § 924(c)'s residual clause head-on, holding that the clause is, in fact, unconstitutionally vague. *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019). But *Davis* does not gut the entire statute. To the contrary, *Davis* leaves intact a separate definition of crime of violence supplied by the statute's "elements clause." *See* § 924(c)(3)(A). That clause defines "crime of violence" as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Id.*

With the residual clause now gone, we can uphold Richardson's conviction and sentence under § 924(c) only if the statute underlying his conviction—aiding and abetting Hobbs Act robbery—satisfies § 924(c)'s elements clause. Although we have not addressed whether aiding and abetting Hobbs Act robbery is a crime of violence under the elements clause, we have held that the principal offense of Hobbs Act robbery is a crime of violence under that clause. *United States v. Gooch*, 850 F.3d 285, 292 (6th Cir. 2017). In *Gooch*, we explained that the Hobbs Act is

a divisible statute that creates two separate offenses, Hobbs Act extortion and Hobbs Act robbery. *Id.* at 291. And we concluded the latter offense is categorically a crime of violence under § 924(c). *Id.* at 292.

Richardson acknowledges our holding in *Gooch* but argues that his conviction for *aiding and abetting* Hobbs Act robbery, unlike a conviction for the *principal* offense, is not a crime of violence under the elements clause. We disagree. There is no distinction between aiding and abetting the commission of a crime and committing the principal offense. Aiding and abetting is simply an alternative theory of liability indistinct from the substantive crime. *United States v. McGee*, 529 F.3d 691, 695–96 (6th Cir. 2008). Thus, under 18 U.S.C. § 2, an aider and abettor is punishable as a principal. *United States v. Davis*, 306 F.3d 398, 409 (6th Cir. 2002) ("[O]ne who causes another to commit an unlawful act is as guilty of the substantive offense as the one who actually commits the act." (quoting *United States v. Maselli*, 534 F.2d 1197, 1200 (6th Cir. 1976)). So to sustain a conviction under § 924(c), it makes no difference whether Richardson was an aider and abettor or a principal.

Moreover, the First, Third, Tenth, and Eleventh Circuits have held that aiding and abetting Hobbs Act robbery is a crime of violence under § 924(c)(3)(A). *See United States v. McKelvey*, 773 F. App'x 74, 75 (3d Cir. 2019); *United States v. García-Ortiz*, 904 F.3d 102, 109 (1st Cir. 2018); *United States v. Deiter*, 890 F.3d 1203, 1215–16 (10th Cir. 2018); *In re Colon*, 826 F.3d 1301, 1305 (11th Cir. 2016). In *Colon*, for example, the Eleventh Circuit explained:

> Because an aider and abettor is responsible for the acts of the principal as a matter of law, an aider and abettor of a Hobbs Act robbery necessarily commits all the elements of a principal Hobbs Act robbery. And because the substantive offense of Hobbs Act robbery "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," . . . then an aider and abettor of a Hobbs Act robbery necessarily commits a crime that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."

*Id.* (citation omitted) (quoting § 924(c)(3)(A)).

We agree with our sister circuits and conclude that Richardson's conviction for aiding and abetting Hobbs Act robbery satisfies the elements clause. So we affirm his conviction.

**D.**

Richardson also alleges that the district court's decision to reinstate his original sentence is both procedurally and substantively unreasonable.  Richardson does not distinguish the court's alleged procedural errors from its alleged substantive errors.  Rather, he levies a general objection that the district court failed to articulate its reasoning for rejecting his arguments and reinstating his original sentence.  And he alleges specific errors, including that the district court (1) overlooked his argument about the calculation of his base offense level and criminal history scores; (2) ignored his post-sentencing conduct, which it could consider under *Pepper v. United States*, 562 U.S. 476 (2011); and (3) failed to consider reducing his sentence on the non-§ 924(c) counts to adjust for the mandatory consecutive sentences on the § 924(c) counts.  *See Dean*, 137 S. Ct. at 1170.

A sentence is procedurally reasonable when the district court "listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances, and took them into account in sentencing him."  *United States v. Vonner*, 516 F.3d 382, 387 (6th Cir. 2008) (en banc) (citation and internal quotation marks omitted).  In the context of resentencing, "[w]hen a defendant raises a particular [, nonfrivolous] argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it."  *United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009) (alterations in original) (quoting *United States v. Lalonde*, 509 F.3d 750, 770 (6th Cir. 2007)).  That is not to say that the district court must state with particularity the grounds for rejecting each argument.  A court's "consideration of the argument and its reasons for rejecting the same need not, however, always be explicit or specific; the record might be sufficient for us to extract this information implicitly and contextually."  *United States v. Moore*, 654 F. App'x 705, 711 (6th Cir. 2016) (citing *United States v. Taylor*, 696 F.3d 628, 635 (6th Cir. 2012)); *United States v. Chiolo*, 643 F.3d 177, 184 (6th Cir. 2011); *United States v. Petrus*, 588 F.3d 347, 352 (6th Cir. 2009)).

The record here reflects that the district court considered Richardson's arguments before reinstating his sentence.  Although the district court did not issue a written decision, the court explained at the sentencing hearing that it "has reviewed the very extensive briefs, which [are] persuasive in many ways, which both the government and the defendant has filed in support of their positions."  (R. 86, Hr'g Tr. at PageID #364.)  The court then heard argument from

Richardson's counsel and the Government's counsel, the latter of whom underscored that the limited remand narrowed the court's inquiry to *Johnson*-related arguments.  Only then did the court resentence Richardson.

Richardson also accuses the district court of failing to address his objections to his base offense level and criminal history scores, as calculated in his revised presentence report.  But the district court did not err by declining to consider those objections.  First, our limited remand gave the court jurisdiction to consider one issue: whether Richardson's sentence was valid after *Johnson*.  Because Richardson's arguments about his base offense level and criminal history scores do not relate to *Johnson*, the district court properly declined to consider those arguments.  Separately, we note that the base offense level and criminal history scores in the presentence report before the district court at the 2017 resentencing are identical to the scores from Richardson's October 2013 presentence report, which the district court used to impose the original sentence.  Richardson did not object to the calculation of those scores in his October 2013 sentencing memorandum, nor did he raise the issue on his first appeal to this court.  Thus, Richardson has forfeited his ability to challenge the calculation of those scores.

Finally, Richardson alleges that the district court substantively erred by failing to adhere to the Supreme Court's decisions in *Pepper* and *Dean*.  Richardson claims that the district court failed to consider his post-sentencing rehabilitation, as *Pepper* allows, but because we issued a limited remand, the district court did not need to consider that factor before resentencing Richardson.  Indeed, the Supreme Court noted that it did not intend "to preclude courts of appeals from issuing limited remand orders, in appropriate cases, that may render evidence of postsentencing rehabilitation irrelevant in light of the narrow purposes of the remand proceeding." *Pepper*, 562 U.S. at 505 n.17.  For that reason, we have held that *Pepper*-related arguments are appropriate only when the remand is general.  *See United States v. Williams*, 522 F. App'x 278, 279 (6th Cir. 2013) ("[*Pepper*] does not . . . empower a district court to exceed the scope of a limited remand."); *United States v. Gapinski*, 422 F. App'x 513, 520 (6th Cir. 2011) ("*Pepper* held that a general remand leaves the district court free to sentence de novo.").  Nor did the district court err by not addressing Richardson's request for a reduced sentence for his non-§ 924(c) convictions.  In *Dean*, the Supreme Court held that the district court may consider the length of

the defendant's mandatory sentence under § 924(c) when calculating the proper sentence *for the predicate offense*.  137 S. Ct. at 1176–77.  But *Dean* does not allow the court to modify a defendant's sentence under § 924(c) and therefore does not apply here.  Accordingly, Richardson's *Pepper* and *Dean* arguments fail.

**E.**

Richardson also argues that the district court deprived him of his right to allocute fully at the post-remand sentencing hearing.  We review an allegation of the complete denial of a right to allocute de novo.  *United States v. Wolfe*, 71 F.3d 611, 614 (6th Cir. 1995).  But when the appellant alleges an improper limitation on his right to allocute—but failed to object below—we review for plain error.  *United States v. Carter*, 355 F.3d 920, 926 n.3 (6th Cir. 2004).

At the close of the sentencing hearing, the district court allowed Richardson to speak from the podium and address the court.  Richardson immediately contested the merits of his conviction:

> The government attorney said the sentence that was imposed the first time was appropriate.  Well, you got a guy fixin' to get out next year who went in and committed these robberies.  I didn't commit one robbery.  No witness, no civilian witness identified me.  Even my co-defendant said I never committed a robbery.  They committed a robbery, but he fixin' to get out next year.

(R. 86, Hr'g Tr. at PageID #373.)  The district court interrupted Richardson to explain that the jury had determined his guilt, but it gave Richardson another opportunity to speak.  Yet again, Richardson returned to the merits of his conviction, noting that "district courts have said that conspiracy to commit Hobbs Act robbery is not a crime of violence."  (*Id.*)  The district court again interrupted Richardson and ended his allocution.  Richardson's counsel did not object.

There is no constitutional right to allocution.  *Pasquarille v. United States*, 130 F.3d 1220, 1223 (6th Cir. 1997) (citation omitted).  Instead, that right derives from Federal Rule of Criminal Procedure 32, which requires the court to "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence" before the court imposes the sentence.  Fed. R. Crim. P. 32(i)(4)(A)(ii).  But the district court need not allow the defendant to allocute when the court is resentencing the defendant under a limited remand.  *United States v. Jeross*, 521 F.3d 562, 585 (6th Cir. 2008) ("Rule 32 requires allocution only before a court imposes

the *original* sentence on a defendant, and does not require allocution at *resentencing*."). Because the district court allowed Richardson to allocute when it did not have to, it did not err in ultimately terminating Richardson's allocution after he twice sought to contest the merits of his underlying conviction.

## III.

## A.

Finally, we turn to the second and most recent remand from the Supreme Court. The Court vacated our judgment in *Richardson II* and asked us "to consider the First Step Act of 2018, Pub. L. No. 115–391 (2018)." *Richardson*, 139 S. Ct. at 2713–14. We do so now.

One of the First Step Act's provisions amends sentencing language under § 924(c). To be clear, the Act does not change the mandatory-minimum sentences for defendants convicted of possessing, brandishing, or discharging a firearm during a crime of violence. Moreover, § 924(c) has always imposed stiffer penalties for repeat offenders, and the Act does not change that, either. So today, a defendant convicted under § 924(c) with a prior conviction under that section is still subject to a mandatory prison sentence of at least 25 years. § 924(c)(1)(C)(i). But the Act does change what counts as a prior conviction, and that change is significant.

When the district court resentenced Richardson in 2017, § 924(c)(1)(C) prescribed that "[i]n the case of a second or subsequent conviction under this subsection, the person shall . . . be sentenced to . . . not less than 25 years." 18 U.S.C. § 924(c)(1)(C)(i) (2006) (amended 2018). That raises the question: What counts as a second or subsequent conviction? The Supreme Court answered that question in *Deal v. United States*, 508 U.S. 129 (1993). There, the Court interpreted the word, conviction, to mean the "finding of guilt by a judge or jury that necessarily precedes the entry of a final judgment of conviction." *Id.* at 132. Thus, the Court held that the 25-year mandatory-minimum sentence attaches when a defendant is convicted of multiple § 924(c) counts in the same proceeding. *Id.* at 135–36; *see also United States v. Washington*, 714 F.3d 962, 970 (6th Cir. 2013).

To contextualize that holding, imagine a defendant with no criminal history who was convicted on two counts of § 924(c)(1)(A)(ii), the subsection that criminalizes brandishing a firearm during a crime of violence. On the first count, the defendant would face a seven-year mandatory minimum sentence. As to the second count, the court must treat the defendant as a repeat offender, given his conviction on the first count, and therefore impose the 25-year mandatory-minimum sentence for that count. Those sentences run consecutively. *See* § 924(c)(1)(D)(ii).

Richardson had no prior convictions under § 924(c) before the jury convicted him of five counts under § 924(c). Richardson's first count was for brandishing a firearm, so the district court imposed the mandatory seven-year sentence. *Id.* § 924(c)(1)(A)(ii). And under *Deal*, the district court treated Richardson as a repeat offender and imposed 25-year mandatory-minimum sentences for each of the remaining four counts. All told, the district court sentenced Richardson to 107 years in prison for his § 924(c) convictions.

Enter the First Step Act. The Act amends § 924(c) by eliminating the phrase, "second or subsequent conviction under this subsection," and inserting the clause, "violation of this subsection that occurs after a prior conviction under this subsection has become final." *See* First Step Act, § 403(a); *see also* § 924(c)(1)(C). This means that a defendant would, in a general sense, have to be a repeat offender with a prior, final conviction to be eligible for the mandatory enhancement. So if the Act applied to Richardson, he would receive a seven-year sentence for the first count under § 924(c) and seven-year sentences—also to run consecutively—for each of the four other counts. Thus, Richardson would receive a 35-year sentence if the district court were to sentence him today, under the backdrop of the First Step Act.

The question before us is whether Richardson can benefit from the First Step Act's amendments to § 924(c). We note, at the outset, that the relevant section in the Act—section 403—contains a specific sub-section describing the Act's "applicability to pending cases." *See* First Step Act, § 403(b). That sub-section states: "This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." *Id.* Common sense would seem to dictate that the Act does not apply to Richardson, since the district court resentenced

him more than one year before the Act became law.  But Richardson makes two main arguments for why he is entitled to resentencing, and we consider each in turn.

First, Richardson argues that section 403 does not create new law but clarifies what the law has always meant.  He finds support in section 403's title, which reads: "Clarification of Section 924(c) of Title 18, United States Code."  First Step Act, § 403.  According to Richardson, Congress has made clear that the courts could have *never* sentenced defendants like him—with no prior, final conviction under § 924(c)—as repeat offenders, even before the Act.

The distinction between a new law and a clarification can be significant.  When Congress replaces or changes an existing criminal law, we presume that the new law "does not alter penalties incurred before the new law took effect."  *United States v. Blewett*, 746 F.3d 647, 650 (6th Cir. 2013) (en banc).  Indeed, under the general saving statute:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109.  So if the First Step Act *changed*—rather than clarified—§ 924(c), we would expect that change to operate prospectively and to have no retroactive effect on a defendant who had been convicted and sentenced.  By contrast, a clarification spells out the statute's original meaning. *See United States v. Palacios-Suarez*, 418 F.3d 692, 699 (6th Cir. 2005) (comparing the meaning of the original text and the amendment to conclude that Congress's later clarification of § 924(c) left the "original understanding of the [statutory language] unchanged"); *see also Brown v. Thompson*, 374 F.3d 253, 260 (4th Cir. 2004) (interpreting the original statute's meaning to conclude that the amendment is "a clarification rather than a substantive change"); *Piamba Cortes v. Am. Airlines, Inc.*, 177 F.3d 1272, 1290 (11th Cir. 1999) (concluding that because the legislative history of the amended statutory text "is consistent with a reasonable interpretation of the original text," the amendment "clarifies, rather than effects a substantive change to, existing law"); *United States v. Sepulveda*, 115 F.3d 882, 885–86 n.5 (11th Cir. 1997) (interpreting the original statutory text to conclude that the amendment's itemization of particular access devices did not substantively change the criminal statute's scope and meaning).

To press that point, Richardson directs us to *Fiore v. White* in which the Supreme Court held that the Pennsylvania Supreme Court's interpretation of state criminal law meant that the habeas petitioner could not have violated a Pennsylvania criminal statute. 531 U.S. 225, 228 (2001). That case concerned the state-court criminal prosecution of the petitioner, Fiore, and a co-defendant, Scarpone, under a Pennsylvania criminal statute prohibiting the operation of a hazardous waste facility without a permit. *Id.* at 226. Fiore and Scarpone maintained their innocence, alleging that they held a permit to operate the facility. The Commonwealth, however, argued that Fiore and Scarpone's operation of the facility deviated "so dramatically from the permit's terms" that the defendants effectively violated the statute. *Id.* at 227. Both men were convicted, and a Pennsylvania appellate court upheld their convictions, but their fates diverged when they appealed to the Pennsylvania Supreme Court. That court declined to review Fiore's conviction, although it granted review of—and reversed—Scarpone's conviction based on the court's interpretation of that state statute in the first instance; it held that because Scarpone had a permit to operate the facility, he could not have violated the statute. *Id.* (discussing *Commonwealth v. Scarpone*, 634 A.2d 1109, 1112 (Pa. 1993)).

Fiore then petitioned for habeas corpus, arguing that his incarceration violated the Fourteenth Amendment's Due Process Clause because the Commonwealth failed to prove an element of the crime: that he was operating the hazardous waste facility *without* a permit. The Supreme Court, however, was unsure whether the Pennsylvania Supreme Court had simply "announced a new rule of law" when it reversed Scarpone's conviction. *Id.* at 227–28. If that were the case, Fiore would not be entitled to relief because the Constitution does not obligate state courts to apply their decisions retroactively. *Id.* at 227. But if the *Scarpone* court merely "furnishe[d] the proper statement of law at the date Fiore's conviction became final," that would implicate the Constitution: The Fourteenth Amendment's Due Process Clause prohibits states from convicting a person of a crime without proving *all* the elements of that crime beyond a reasonable doubt. *Id.* at 228–29. The Commonwealth could not convict Fiore for actions that never rose to criminal conduct in the first place.

To resolve that uncertainty, the Supreme Court certified a question to the Pennsylvania Supreme Court, asking whether its decision in *Scarpone* stated the correct interpretation of the law

of Pennsylvania at the time of Fiore's conviction. *Id.* at 228. The Pennsylvania Supreme Court answered in the affirmative, explaining that its ruling in *Scarpone* "merely clarified the plain language of the statute." *Id.* (citation omitted). And because the Pennsylvania Supreme Court was not announcing a new rule of law but articulating what the law had always been, the Supreme Court held that Fiore had never committed a crime. *Id.*

Richardson argues that section 403, much like the Pennsylvania Supreme Court's decision in *Scarpone*, simply clarifies the correct interpretation of § 924—explaining what the law always meant—and thus applies to defendants like him. But *Fiore* provides no such support here. In that case, a court was performing its traditional function of construing a statute and did so in a way that contradicted how the executive had enforced it. *See Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is."). Here, the *Deal* Court already authoritatively interpreted § 924(c), *see id.* at 146 ("this is the [*S*]*upreme* [C]ourt"), and *Congress* then amended the statutory language. *See* Section III.A, *supra*. In such a case, Congress's statutory amendment only applies retrospectively either if *courts* interpret that amendment to merely clarify the original statute or interpret it to mandate retrospective application of its changed law. *See Fed. Hous. Admin. v. Darlington, Inc.*, 358 U.S. 84, 90 (1958) (explaining that even "[s]ubsequent legislation which declares the intent of an earlier law is not, of course, conclusive in determining what the previous Congress meant"); *see also Marbury*, 5 U.S. at 177. To determine the Act's effect, *we* must now exercise our judicial function and "say what the law is." *Id.*

That Congress altered the statutory language alone provides at least some hint the amendment changed the law rather than clarified what the law always meant. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 256 (2012) (explaining that "a change in the language of a prior statute presumably connotes a change in meaning"). Even so, the Act's plain language confirms this presumption while making it clear that the Act's changes do not apply retrospectively. Congress itself addresses the Act's applicability to pending cases. *See* First Step Act, § 403(b). That subsection states that the Act's amendment to § 924(c) "shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." *Id.* From that, we infer that

section 403 *shall not apply* to any offense committed before December 21, 2018, (the date the First Step Act became law), if a sentence for the offense *had been imposed* by that date.  Far from suggesting that its amendment clarifies what § 924(c) has always meant, Congress has, in essence, drawn a line in the sand.  Defendants sentenced after December 21, 2018, may benefit from Congress's amendment to § 924(c), but defendants sentenced before that date cannot.  If Congress intended to clarify how to read § 924(c)—and how courts should have interpreted that section all along—it would not have included the subsection on applicability (and, by implication, *inapplicability*) to pending cases.[1]

What about the section title's use of the word, clarification?  To be sure, we may consider the title when we are interpreting an ambiguous statute.  *See, e.g.*, *I.N.S. v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 189 (1991) ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text.").  But we need not refer to titles, which do not carry the force of law, when the statutory text is clear.  *See, e.g.*, *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) ("[A] subchapter heading cannot substitute for the operative text of the statute."); Scalia & Garner, *supra*, at 222 ("[A] title or heading should never be allowed to override the plain words of a text.").  And here, the text makes clear that the only defendants who can benefit from section 403 are those whose conduct predates December 21, 2018, but whose sentences had not yet been imposed (along with defendants whose conduct occurred after the First Step Act became law).

That brings us to Richardson's second argument:  that a sentence is not *imposed* until the defendant has exhausted his direct appeals. In the general context of criminal sentencing, a sentence is "imposed" when the trial court announces it, not when the defendant has exhausted his appeals from the trial court's judgment. Congress has repeatedly used derivations of the word "impose" to denote the moment that the district court delivers the defendant's sentence.  Most telling is 18 U.S.C. § 3742(a), which Congress titled "[r]eview of a sentence" and which allows the defendant to appeal a sentence "imposed in violation of law."  18 U.S.C. § 3742(a), (a)(1). So

---

[1]And even if Congress had intended to simply clarify § 924(c), we must still apply the plain language of section 403(b)—that the amendment shall apply to those offenses committed before the Act's enactment if a sentence has not yet been imposed before that time—to determine whether section 403 applies to Richardson.

an appeal follows the imposition of a sentence; it is not part of it.  Separately, 18 U.S.C. § 3553(a) provides district courts with a list of factors to consider when sentencing a defendant:  "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in . . . this subsection."  18 U.S.C. § 3553(a); *see also id.* § 3553(b) ("The court shall impose a sentence" within the Guidelines "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken in to consideration" by the Guidelines.).  In 18 U.S.C. § 3582(c), Congress provides that a sentencing court "may not modify a term of imprisonment once it has been imposed" except under certain circumstances.  18 U.S.C. § 3582(c).  Obviously, it would make no sense to permit a sentencing court to modify a sentence while the case is on appeal.  But that is exactly what would happen if a sentence were not imposed until finalized on appeal.  And Congress has instructed district courts, "in determining whether the terms imposed are to be ordered to run concurrently or consecutively, [to] consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a)."  18 U.S.C. § 3584(b).

Recently in *United States v. Davis*, we opined that a sentence is "imposed" when it is orally pronounced rather than when a written judgment is entered.  924 F.3d 899, 904–05 (6th Cir. 2019).  In so doing, we noted that we were "inclined to agree with the Government that [a] court lacked the authority to change its mind and impose a different sentence once it had orally pronounced a sentence in open court." *Id.*; *see id.* at 905 n.4.

Moreover, and even more specifically, we held that a defendant challenging his conviction and sentence on direct appeal could not benefit under a separate section of the First Step Act with a subsection on applicability to pending cases *identical* to the subsection in section 403.  *United States v. Wiseman*, 932 F.3d 411, 417 (6th Cir. 2019).  After the jury convicted the defendant, Wiseman, on one count of possession with the intent to distribute cocaine and one count of being a felon in possession of a firearm and ammunition, the district court imposed Wiseman's sentence on September 19, 2018.  *Id.* at 415–16.  And because the government filed an information under 21 U.S.C. § 851(a) describing Wiseman's prior felony drug convictions, Wiseman's statutory-maximum prison term increased from 20 to 30 years, as 21 U.S.C. § 841(b)(1)(C) requires.  *Id.* at 416–17.

On direct appeal, Wiseman argued that he was entitled to relief under section 401 of the First Step Act, which narrows the scope of prior drug convictions that trigger a higher sentence. *Id.* at 417. But we gave two "independent reasons" for why Wiseman's argument failed. *Id.* First, we noted that section 401 has limited retroactive effect. Like section 403, section 401 contains a subsection on applicability to pending cases, stating that the amendments "shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." First Step Act, § 401(c). We held that section 401's "limited retroactivity" does not apply to Wiseman "as he was sentenced prior to [the Act's] effective date." *Wiseman*, 932 F.3d at 417. Second, we explained that the First Step Act did not alter the definition of predicate offenses under 21 U.S.C. § 841(b)(1)(C), the section triggering Wiseman's heightened sentence. *Id.* So even if the district court had not sentenced Wiseman before the First Step Act became law, he was still ineligible for relief.

We also noted, for the entire First Step Act, that the only broad statement of retroactivity is section 404, which Congress enacted to make retroactive certain parts of the Fair Sentencing Act of 2010. We did not suggest that section 403 was like section 404 or dissimilar from section 401.

Richardson contends that *Wiseman* is unpersuasive because our decision addresses a different provision of the First Step Act. True, *Wiseman* does not address section 403 of the First Step Act. But we find *Wiseman* particularly valuable, given that we were interpreting a subsection of the First Step Act *identically worded* to section 403(b). *See Atl. Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932) ("[T]here is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning."); *see also* Scalia & Garner, *supra*, at 172 ("The presumption of consistent usage applies also when different sections of an act or code are at issue."). Our reasoning in *Wiseman* applies with equal force here: The district court imposed Richardson's sentence in September 2017, making him ineligible for relief under the First Step Act.

In addition, several other federal appellate courts have denied relief to defendants on direct appeal who, like Richardson, were sentenced before December 21, 2018. In *Pierson v. United States*, the Seventh Circuit held that a defendant seeking relief under section 401 was ineligible for

relief because his "[s]entence was 'imposed' here within the meaning of [section] 401(c) when the district court sentenced [him], regardless of whether he appealed a sentence that was consistent with applicable law at that time it was imposed." 925 F.3d 913, 928 (7th Cir. 2019); *accord United States v. Aviles*, 938 F.3d 503, 510 (3d Cir. 2019) (finding that section 401 does not apply to a defendant who was sentenced before the effective date of the Act). The Eleventh Circuit reached the same conclusion as to section 403, explaining that "the date that matters is the one on which the district court sentenced him." *United States v. Garcia*, No. 17-13992, at *3 (11th Cir. July 9, 2019) (order denying motion to correct sentence).

To be sure, Richardson finds support for his second argument in *United States v. Clark*, 110 F.3d 15 (6th Cir. 1997), *superseded by regulation on other grounds*. In *Clark*, we held that the criminal defendant was entitled to resentencing under a recently amended federal sentencing law, even though the district court had sentenced the defendant before Congress amended the law. *Id.* at 16–17. After the defendant in *Clark* pleaded guilty to a federal drug crime and the district court sentenced her in September 1991, the case bounced between the district court and this court several times while the defendant appealed her sentence and resentence. *Id.* at 16. While one such appeal was pending, Congress amended 18 U.S.C. § 3553(f) to create a safety-valve provision that allows district courts to impose a lesser sentence on certain first-time, non-violent offenders. *Id.* (discussing Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103–322, § 80001(a), 108 Stat. 1796, 1985–86 (1994)). Congress explained that the safety-valve provision "shall apply to all sentences imposed on or after the 10th day beginning after the date of enactment of this Act." Violent Crime and Control and Law Enforcement Act at § 80001(c).

The defendant in *Clark* argued that because Congress adopted the safety-valve provision while she was directly appealing her sentence, she should get the benefit of the new law. *Clark*, 110 F.3d at 17. We agreed. We noted that the amended statute "does not address the question of its application to cases pending on appeal," but its "purpose statement [ ] suggests that it should receive broad application and should apply to cases pending on appeal when the statute was enacted." *Id.* We also explained that a "case is not yet final when it is pending on appeal" and that the "initial sentence has not been finally 'imposed' within the meaning of the safety valve

statute because it is the function of the appellate court to make it final after review or see that the sentence is changed if in error." *Id.*

Although *Clark* would seem to provide at least some support for Richardson's position, it is also apparent that the *Clark* court was concerned with the concept of finality and when a sentence was "finally" imposed rather than simply imposed. *Id.* In fact, the *Clark* court itself acknowledged that the sentencing reform legislation at issue there "was adopted a month after the 120 month sentence in this case was *imposed* in the district court." *Id.* at 17 (emphasis added). And that same court conceded that Congress's directive that the subsection apply "'to all sentences *imposed* on or after' the date of enactment . . . *does not* address the question of its application to cases pending on appeal." *Id.* at 17 (emphasis added) (quoting § 80001(c)). Our focus is on simple imposition, not finality.

Indeed, Richardson argues that *Clark* was "fully in accord with Supreme Court precedent" (Appellant's First Suppl. Br. at 6) but the precedent he cites similarly concerns finality of the sentence and not when the sentence is imposed. Richardson cites *Griffith v. Kentucky*, 479 U.S. 314 (1987), a Supreme Court decision addressing the retroactivity of a new constitutional rule of criminal procedure. One year before *Griffith*, the Court held that a state-court criminal defendant could establish a violation of his Sixth Amendment rights (as applied to the states by the Fourteenth Amendment) by showing that the prosecutor used a peremptory challenge to strike a prospective juror because of race. *Batson v. Kentucky*, 476 U.S. 79 (1986). In turn, the Court held in *Griffith* that its ruling in *Batson* applied "to all cases, state or federal, pending on direct review or not yet final." 479 U.S. at 328. And by "final," the Court "mean[t] a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." *Id.* at 321 n.6. So a defendant already convicted and sentenced could benefit from *Batson's* "newly declared constitutional rule," provided the defendant had not exhausted his direct appeals. *Id.* at 322. Richardson's reliance on *Griffith*, however, is misplaced. *Griffith* not only focused on when a conviction is "final" but that case also concerns the retroactive effect of a new *constitutional* rule of criminal procedure, not a new criminal statute like the First Step Act. As we have explained, *Griffith* "did not purport to

apply to congressional statutes . . . to which the general saving statute applies." *United States v. Finley*, 487 F. App'x 260, 266 (6th Cir. 2012).[2]

Richardson next directs us to *Hamm v. City of Rock Hill*, 379 U.S. 306 (1964), for the proposition that a new statute prohibiting prosecution of certain conduct applies to defendants challenging their convictions on direct appeal. In *Hamm*, the Supreme Court held that the passage of the Civil Rights Act of 1964 abated the petitioners' state-court trespass convictions for peacefully protesting at establishments that discriminated because of race, even though the petitioners' conduct preceded the passage of the Act. *Id.* at 308. *Hamm* is distinct, first, because the Civil Rights Act did not simply replace one criminal statute with a modified statute. Rather, the Act "substitutes a right for a crime." *Id.* at 314. As the Court explained, the Act "forbids discrimination in places of public accommodation and removes peaceful attempts to be served on an equal basis from the category of punishable activities." *Id.* at 308. But here, Congress did not substitute a right in place of a crime when it passed the First Step Act—it is every bit as criminal to possess a firearm during a crime of violence today as it was before the First Step Act became law. Second, the Court relied in part on the Supremacy Clause in overturning the petitioners' convictions, noting that a "contrary state practice or state statute must give way" to federal law. *Id.* at 315. By contrast, the First Step Act—a federal statute—amends an existing federal statute and therefore does not implicate the Supremacy Clause. In sum, *Hamm* offers no support for Richardson's position.

Thus, *Clark*, *Griffith*, and *Hamm* do not persuade us to abandon the general understanding of "impose" in criminal sentencing law or our published decision in *Wiseman*. *Clark*, of course, also addresses a different amendment to a different statute from the amendment and statute here. And as the Seventh Circuit noted in *Pierson*, our analysis in *Clark* focused primarily on the

---

[2]We also note that *Bradley v. United States*, 410 U.S. 605 (1973), which Richardson also cites, provides no support. In *Bradley*, the Court remarked that "[a]t *common law*, the repeal of a criminal statute abated all prosecutions which had not reached final disposition in the highest court authorized to review them." *Id.* at 607 (emphasis added). And the Court noted that abatement-by-repeal occurs when a legislature repeals a statute and re-enacts it with different penalties. *Id.* at 607–08. But the Court also explained that legislatures may "avoid such results" by including a saving statute, much like Congress has done through 1 U.S.C. § 109. *Id.* at 608; *see also Hamm v. City of Rock Hill*, 379 U.S. 306, 322 (1964) (Harlan, J., dissenting) (explaining that Congress has rebutted common-law rule of abatement through general savings clause).

amendment's purpose rather than the statutory text. 925 F.3d at 928. So *Clark* carries less force as applied to other statutes.

Aside from that, to the extent that Richardson argues that *Clark* has broad applicability, there is a question whether our assertion that "[a] case is not yet final when it is pending on appeal" remains—or was ever—good law. *Clark*, 110 F.3d at 17. For one, we cited no authority to support that assertion—perhaps because there was none. But there was (and remains) no shortage of authority for the proposition that a district court's imposition of a sentence is a final judgment. *See, e.g.*, *Betterman v. Montana*, 136 S. Ct. 1609, 1613 (2016) (explaining that criminal proceedings end when, "[a]fter conviction, the court imposes sentence"); *Flanagan v. United States*, 465 U.S. 259, 263 (1984) ("In a criminal case the [final judgment] rule prohibits appellate review until conviction and imposition of sentence."); *Berman v. United States*, 302 U.S. 211, 212 (1937); *cf. Clay v. United States*, 537 U.S. 522, 525 (2003) (holding that in the § 2255 context, "a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction").

Indeed, the Supreme Court remarked nearly six decades before *Clark* that "[f]inal judgment in a criminal case means sentence. The sentence is the judgment." *Berman*, 302 U.S. at 212 (citations omitted). In *Berman*, the district court sentenced the defendant to a 366-day prison sentence but suspended the execution of that sentence and placed the defendant on probation. *Id.* at 211–12. The defendant then appealed the sentence, and while that appeal was pending, he applied to the district court for resentencing. *Id.* at 212. Without vacating its prior sentence, the district court granted the request, re-imposed the original sentence, and added a new fine. *Id.* The defendant appealed again, leaving the Second Circuit with two pending appeals. *Id.* The Second Circuit dismissed the first appeal, concluding that "the first sentence was interlocutory." *Id.* As to the second appeal, the Second Circuit affirmed the defendant's sentence. *Id.* The Supreme Court held that the Second Circuit erred in treating the first sentence as interlocutory, noting that in criminal cases, "the judgment is final for the purpose of appeal when it terminates the litigation between the parties on the merits and leaves nothing to be done but to enforce by execution what has been determined." *Id.* at 212–13 (citations and internal quotation marks omitted). Thus, the district court's "first sentence was a final judgment." *Id.* at 214.

Since we decided *Clark*, the Supreme Court has repeated the proposition that a "[f]inal judgment in a criminal case means sentence," and that "[t]he sentence is the judgment." *Burton v. Stewart*, 549 U.S. 147, 156 (2007) (per curiam) (quoting *Berman*, 302 U.S. at 212). So have we—both before and after we decided *Clark*. *See, e.g.*, *United States v. Canelas-Amador*, 837 F.3d 668, 671 (6th Cir. 2016); *In re Stansell*, 828 F.3d 412, 416 (6th Cir. 2016); *Northern v. United States*, 300 F.2d 131, 132 (6th Cir. 1962) (per curiam order). To be sure, *Clark* is inconsistent with *Berman* and *Burton*, but Richardson's argument fails to persuade even if *Clark* remains the law of the circuit.

For these reasons, Richardson is ineligible for relief under the First Step Act.

**IV.**

We **AFFIRM** Richardson's conviction and sentence.