RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0099p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

　　　　　*Plaintiff-Appellee/Cross-Appellant*,

　　*v.*

AUNDRE DAVIS,

　　　　　*Defendant-Appellant/Cross-Appellee*.

┐
│
│
│
│
>　Nos. 18-3031/3145
│
│
│
│
┘

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 3:16-cr-00107-4—Jack Zouhary, District Judge.

Argued: March 14, 2019

Decided and Filed: May 22, 2019

Before: CLAY, GRIFFIN, and STRANCH, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Jeffrey P. Nunnari, Toledo, Ohio, for Appellant/Cross-Appellee. Laura McMullen Ford, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee/Cross-Appellant. **ON BRIEF:** Jeffrey P. Nunnari, Toledo, Ohio, for Appellant/Cross-Appellee. Laura McMullen Ford, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee/Cross-Appellant.

————————————

**OPINION**

————————————

JANE B. STRANCH, Circuit Judge.  After a jury trial, Aundre Davis was convicted of six counts relating to the sex trafficking of a minor.  He was involved in helping to arrange for a 16-year-old girl, "S.S.," to engage in acts of prostitution over three days in January 2016.

On appeal, Davis challenges only the procedural reasonableness of his sentence.  He argues that the district court erred in grouping his offense conduct into three groups under the Sentencing Guidelines, rather than a single group, because his conduct involved a single scheme, with a single victim, over a short period of time.  He also argues that there was insufficient evidence to support a specific-offense enhancement for exercising "undue influence" over a minor.  For the following reasons, we **AFFIRM** as to the grouping of Davis's offense conduct but **VACATE** the sentence and **REMAND** for the district court to make factual findings relating to the undue-influence enhancement and resentence Davis.  Our disposition of Davis's appeal moots the Government's cross-appeal.

## I.  BACKGROUND

### A.  The Events of January 2016

The facts of this case relate to the prostitution of a 16-year-old, S.S., and her 23-year-old sister.  Davis's co-defendant, Lorenzo Young, contacted S.S. on Facebook in October 2015 to ask if S.S. and her sister were still trading sex for drugs.  S.S. initially said no but, after relapsing, contacted Young in January 2016 to obtain money to buy drugs.  Young said he would arrange a client for her.  S.S.'s sister also spoke to Young about prostituting herself.

On January 25, 2016, S.S. and her sister drove to meet Young because he said he had a friend or friends who would pay money for sex.  It was initially unclear to S.S. whether Young had arranged a client for just her sister or one for her as well, but she testified that she was willing to engage in prostitution to get money to buy drugs.  When they arrived, Davis was also present.  Both men got in the car with S.S. and her sister.  Davis commented to S.S. that she

looked young, and S.S.'s sister responded, "she's 17." Young then directed S.S.'s sister to drive to Fort Wayne, Indiana. S.S. engaged in an act of prostitution that night, splitting the proceeds with Young.

S.S.'s sister drove S.S. back to Ohio the next morning. S.S.'s sister then went back to Fort Wayne, with Davis in the car, after picking up some drugs. That evening, S.S.'s sister drove to pick S.S. up and brought her back to Fort Wayne. Davis was in the car again. S.S. engaged in sex acts for money. She also had sex with Davis. The next day, S.S. and her sister went home to Ohio.

By January 29, two days later, S.S. again needed money to buy drugs. She first asked her mother because she did not want to engage in prostitution again, but her mother turned her down. S.S. called Davis because she was thinking of selling sex to get money for drugs. S.S.'s mother then offered to pay for drugs and rented a motel room for the two of them. But when Davis contacted S.S. to tell her he had arranged for a client, she told him to direct the client to her room and told him where she was staying. After she was done with this client, Young and Davis came for their half of the money. Davis told S.S. that he had another client for her, but she refused because she "had had [her] fill and had money" and she "initially didn't really want to do the first one anyway."

## B. The Sentencing Proceedings

Davis was convicted after a jury trial of one count of conspiracy to engage in sex trafficking of a minor, two counts of transportation of a minor with intent to engage in prostitution, and three counts of sex trafficking of a minor. He was acquitted of obstruction of a sex-trafficking investigation.

In the presentence report, the United States Probation Office calculated Davis's adjusted offense level as 41 and his criminal history category as IV, which resulted in an advisory Guidelines range of 360 months to life imprisonment. Both the Government and the defense objected to these calculations. As relevant here, the Government argued that Davis's offense conduct should be separated into three groups—one for each day of prostitution—rather than one group. The Government also argued that Davis's offense level should be enhanced by two levels

based on his obstruction of justice by breaking his phone.  The defense argued that Davis's offense level should not be enhanced by two levels for exerting "undue influence" over S.S. because, despite the difference in age, S.S. was a "willing participant[] in . . . commercial sex acts" and there was "no direct evidence of undue influence."

In a victim-impact letter, quoted in the presentence report, S.S. expressed that she "initially was willing to participate in these acts of prostitution to support [her] drug addiction." Yet she also alleged that Young and Davis took "advantage of the fact that they knew [her] mind was altered due to drug use, and also being so young [she] was naïve and lacked discernment in [her] decision making. . . . [A]t times when [she] was unsure or uncomfortable continuing in doing the acts of prostitution they would pressure [her] to do them and [she] gave in."

At the initial sentencing hearing, the district court overruled Davis's objection to the undue-influence enhancement, relying principally on the rebuttable presumption that this enhancement applies if there is at least a ten-year difference in age.  The court stated:  "Here there's approximately a 16[-]year age gap between the minor and the defendant. . . . The defendant does not offer much, if anything, by way of rebutting that presumption.  This Court adopts the argument set forth by the government in its sentencing memorandum and, again, relies upon *Willoughby*."[1]

At a subsequent appearance, the district court agreed with the Government that Davis's offense conduct should be split into three groups rather than kept as one group.  Because this grouping resulted in Davis's adjusted offense level being greater than the maximum possible level, the Government withdrew its request for an obstruction-of-justice enhancement.  The court calculated Davis's advisory Guidelines range as life imprisonment and orally pronounced a sentence of life imprisonment.

The day after this sentencing hearing, however, the district court contacted counsel and indicated that it "was inclined to impose a different sentence than that announced at the hearing." The court convened what it called "a continued hearing or a supplemental hearing."  The Government objected, arguing that the oral pronouncement of sentence was final "and should

---

[1]*United States v. Willoughby*, 742 F.3d 229 (6th Cir. 2014).

stand."  Nonetheless, noting that the entry of judgment had not yet been filed, the court decided to vary downwards based on its concern that there was an "unwarranted sentencing disparity" between Davis and his co-defendants.  It sentenced Davis to 360 months' imprisonment.  A written judgment memorializing this sentence followed.

Davis timely appealed the sentence and the Government timely filed a cross-appeal.

## II.  ANALYSIS

This court "review[s] a district court's calculation of the advisory sentencing Guidelines as part of our obligation to determine whether the district court imposed a sentence that is procedurally unreasonable.  In doing so, we review the district court's factual findings for clear error and its legal conclusions de novo."  *United States v. Angel*, 576 F.3d 318, 320 (6th Cir. 2009) (citations and internal quotation marks omitted).  The Government must prove by a preponderance of the evidence that a particular sentencing enhancement applies.  *See id.* at 321.

### A.  Grouping of Offense Conduct

Davis argues that the district court erred by grouping his offense conduct into three groups, one for each of the three days in which S.S. engaged in prostitution, rather than one group.  This grouping resulted in an increase of his Guidelines offense level by three levels.

Section 3D1.2 of the Guidelines explains when closely-related counts of conviction should be grouped together.  It instructs courts to group "[a]ll counts involving substantially the same harm . . . together into a single Group."  USSG § 3D1.2.  It further indicates that separate counts "involve substantially the same harm" when, among other things, they "involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan."  *Id.*  This means that "counts that are part of a single course of conduct with a single criminal objective *and* represent essentially one composite harm to the same victim are to be grouped together."  USSG § 3D1.2, comment. (n.4) (emphasis added).  But if a "defendant is convicted of two counts of rape for raping the same person on different days" then "[t]he counts *are not* to be grouped together."  *Id.*  Similarly, separate counts of conviction for "robbery of the same victim on different occasions" are not to be grouped

together because they "involve[] multiple, separate instances of fear and risk of harm, not one composite harm." *Id.*

In *United States v. Bivens*, 811 F.3d 840 (6th Cir. 2016), we applied § 3D1.2 to hold that the district court was required to separately group at least four of the defendant's five counts of conviction for child pornography and sex with a minor. Although these counts stemmed from a several-month-long relationship with a single child, "all of the relevant counts arose from distinct crimes in terms of time and injury to the victim." *Id.* at 841. Even "[t]he two counts of the same substantive crime—producing child pornography—differ[ed] in time, manner, and place." *Id.* at 842–43. The other counts also involved "'separate instance[s]' of harm." *Id.* at 843.

The same logic applies here, though this case is a closer call than *Bivens*. Unlike in *Bivens*, Davis's actions did not involve "an extended period of time," *id.* at 843, and instead took place over the course of only five days. This case also involved "a single course of conduct with a single criminal objective"—selling sex with a minor. Nonetheless, each of the three counts of sex trafficking of a minor involved separate instances of harm. Trafficking a minor to engage in commercial sex acts on multiple days with different clients is analogous to the Guidelines example of committing rape on different days—even with the same defendant and same victim, each occasion is a separate harm.

Because each of the three counts of sex trafficking of a minor relates to a separate day and harm, the commentary to § 3D1.2 dictates that they should be grouped separately. We therefore affirm the district court's determination that Davis's offense conduct should be counted as three groups. *See Stinson v. United States*, 508 U.S. 36, 38 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.").

**B. Undue-Influence Enhancement**

Davis also argues that the district court erred in imposing a two-level enhancement of his Guidelines offense level for exercising "undue influence" over S.S. He contends that the presumption of undue influence, which applied because he was more than ten years older than

S.S., was rebutted here because "she had engaged in prostitution . . . before Young reached out to her," and "it was [S.S.] and her sister who reached out to Young to prostitute themselves." Thus, "she would have engaged in prostitution . . . whether or not Davis ever entered the picture." Davis also argues that S.S.'s "attribution [in her victim-impact statement] of Davis's 'knowledge' of her drug addiction and that he took advantage of it is not supported by the record." The Government responds, essentially, that Davis has failed to rebut the presumption of undue influence.

Section 2G1.3 of the Guidelines, which relates to the sex trafficking of minors, requires a sentencing court to increase the defendant's offense level by two if "a participant otherwise unduly influenced a minor to engage in prohibited sexual conduct." USSG § 2G1.3(b)(2)(B). The commentary to this section specifies that "the court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior." USSG § 2G1.3, comment. (n.3(B)). It further elaborates that when the defendant "is at least 10 years older than the minor, there shall be a rebuttable presumption that subsection (b)(2)(B) applies. In such a case, some degree of undue influence can be presumed because of the substantial difference in age between the participant and the minor." *Id.*

In this case, the district court relied almost exclusively on this rebuttable presumption. It noted that there was "approximately a 16[-]year age gap" between S.S. and Davis, and then stated that Davis "does not offer much, if anything, by way of rebutting that presumption." Without further discussing the facts of this case, the court said only that it was relying on the Government's arguments in its sentencing memorandum and this court's decision in *Willoughby*. Explicit factual findings were thus limited to noting the age difference between Davis and S.S.

That was insufficient to discharge the responsibility to "closely consider the facts of the case." USSG § 2G1.3, comment. (n.3(B)). The age difference between S.S. and Davis means that there is a rebuttable presumption of undue influence but, by definition, such a presumption can be rebutted. In cases where there is significant record evidence that undercuts this presumption, such as this one, a district court cannot rely solely on the presumption to determine

that the defendant has "compromised the voluntariness of the minor's behavior." *Id.*[2] On this record, instead, the court was required to consider S.S.'s trial testimony that she had previously engaged in prostitution, willingly engaged in prostitution during the events of this case, contacted the defendants to have them procure her clients, and refused a client procured for her by Davis. The court was also required to consider S.S.'s assertion in her victim-impact letter that Davis pressured her into engaging in acts of prostitution.[3]

For a sentence to be procedurally reasonable, the sentencing court "must adequately explain the chosen sentence to allow for meaningful appellate review." *Gall v. United States*, 552 U.S. 38, 50 (2007). Adequate explanation was lacking in this case, especially considering the Guidelines' command to "closely consider the facts of the case" when determining whether to apply an undue-influence enhancement. Because the court did not make adequate factual findings, it "fail[ed] to adequately explain the chosen sentence." *Id.* at 51. We therefore vacate and remand for resentencing. Given the apparent conflict between S.S.'s trial testimony and her victim-impact statement, "[t]he district court is best situated to make the necessary factual findings and conclusions in the first instance." *United States v. Straughter*, 950 F.2d 1223, 1234 (6th Cir. 1991).

### C. Finality of Oral Sentence

One final issue remains. In its cross-appeal, the Government argues that the district court erred by reconsidering Davis's sentence after it had pronounced the sentence in open court. It does not quibble with the reasonableness of the new sentence itself; rather, it claims that the court lacked the authority to modify the sentence once it was imposed—and that a sentence is imposed when it is orally pronounced. Davis responds that the court could reconsider its

---

[2]Although it may seem inappropriate to describe a minor as voluntarily engaging in prostitution, Guideline § 2G1.3 pertains solely to commercial sex acts involving minors. And the undue-influence enhancement is a specific-offense characteristic under § 2G1.3. Accordingly, the structure of the Guidelines indicates that there must be cases involving the prostitution of minors where this enhancement does not apply.

[3]We note that the three cases the Government relies on to support the undue-influence enhancement involved a defendant causing an underage victim to engage in sex acts that she would not have otherwise engaged in by taking advantage of a romantic relationship, or the victim's lack of housing or transportation. *See United States v. Farmer*, 673 F. App'x 518, 520, 524 (6th Cir. 2016); *United States v. Reid*, 751 F.3d 763, 768 (6th Cir. 2014); *Willoughby*, 749 F.3d at 241. None of those factors appear to be present here.

sentence because a sentence is imposed when the written judgment is entered. We are inclined to agree with the Government that the court lacked the authority to change its mind and impose a different sentence once it had orally pronounced a sentence in open court.**[4]**

As the Government conceded at oral argument, however, this issue is moot because we are vacating and remanding for resentencing on the undue-influence-enhancement issue. At this resentencing, the district court is free to impose a sentence of thirty years' imprisonment—or another sentence. *See United States v. Garcia-Robles*, 640 F.3d 159, 164 (6th Cir. 2011) (holding that on a general remand, when a sentence has been vacated on appeal as procedurally unreasonable, the defendant is entitled to a plenary resentencing). We therefore cannot grant the Government's requested relief of remanding for the court to reimpose its initial oral sentence.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the grouping of Davis's offense conduct, **VACATE** the sentence, and **REMAND** for the district court to make factual findings relating to the undue-influence enhancement and resentence Davis.

---

**[4]**18 U.S.C. § 3582(c) provides that the sentencing court "may not modify a term of imprisonment once it has been imposed" except under certain specified circumstances, such as when permitted by Federal Rule of Criminal Procedure 35. Rule 35, in turn, permits a court to reduce a sentence for substantial assistance or to correct a clerical error. Because it is undisputed that none of the circumstances listed in § 3582(c) apply, the district court could change its mind after orally pronouncing sentence in this case only if the term of imprisonment had not yet been imposed.

We have not squarely addressed the question of whether a sentence is imposed when it is orally pronounced or when written judgment is entered, but we have strongly implied that a sentence is imposed when it is orally pronounced. In *United States v. Arroyo*, 434 F.3d 835 (6th Cir. 2006), and then *United States v. Houston*, 529 F.3d 743 (6th Cir. 2008), this circuit addressed whether a district court could grant a motion for reconsideration of the sentence. In both cases, the motion was filed after the sentence was orally pronounced but before the entry of written judgment. *Houston*, 529 F.3d at 747; *Arroyo*, 434 F.3d at 837. In both instances, we held that the court erred in granting the motion for reconsideration because the case did not fall within any of the exceptions contained within Rule 35 and thus the court could not modify the term of imprisonment. *Houston*, 529 F.3d at 748–49; *Arroyo*, 434 F.3d at 838–39. Indeed, *Arroyo* noted that Rule 35 "is not intended to afford the court the opportunity to change its mind about the appropriateness of the sentence." 434 F.3d at 838 (quoting *United States v. Galvan-Perez*, 291 F.3d 401, 406 (6th Cir. 2002)). Implicit in these holdings is that the sentence was imposed when it was orally pronounced. After all, if the sentence had not yet been imposed, there would be no need to satisfy Rule 35. *See* 18 U.S.C. § 3582(c) (stating that a court cannot modify a sentence once imposed except under certain circumstances).

Furthermore, Rule 35 itself states, "As used in this rule, 'sentencing' means the oral announcement of the sentence." Fed. R. Crim. P. 35(c). The advisory committee notes to the 2004 amendments of this rule proclaim that this provision was added to resolve a circuit split over whether the term "imposition of sentence" means "the oral announcement of the sentence" or "the entry of the judgment."