# United States Court of Appeals
## For the First Circuit

No. 18-1597

UNITED STATES OF AMERICA,

Appellee,

v.

ALFREDO GONZALEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Kayatta, Selya, and Stahl,
Circuit Judges.

Tina Schneider for appellant.
Seth R. Aframe, Assistant United States Attorney, with whom
Scott W. Murray, United States Attorney, and Kasey A. Weiland,
Assistant United States Attorney, were on brief, for appellee.

January 31, 2020

**SELYA**, **Circuit Judge**.  Defendant-appellant Alfredo Gonzalez argues that his federal drug-trafficking conviction should be set aside because an ineligible juror was seated on his jury.  In the alternative, he argues that his twenty-year mandatory minimum recidivist sentence should be vacated.  Concluding that the appellant's asseverational array lacks merit, we affirm both his conviction and his sentence.

## I. BACKGROUND

We start by rehearsing the travel of the case.  On October 5, 2016, a federal grand jury sitting in the District of New Hampshire indicted the appellant, along with fifteen co-defendants, on a charge of conspiracy to distribute and to possess with intent to distribute controlled substances.  See 21 U.S.C. §§ 841(a), 846.  Pertinently, the indictment alleged that the appellant's conduct as a member of the conspiracy "involved one kilogram or more of a mixture or substance containing a detectable amount of heroin" in violation of 21 U.S.C. § 841(b)(1)(A)(i).  The appellant entered a "not guilty" plea to the indictment.

While the case was awaiting trial, the government filed an Information pursuant to 21 U.S.C. § 851(a) (the Information).  Through the Information, the government placed on record the appellant's 1997 New Hampshire state conviction for possession of a narcotic drug with intent to sell.  See N.H. Rev. Stat. Ann. § 318-B:2(I) (1990).  It is undisputed that the appellant received

a prison sentence of three-and-one-half to seven years in the state case. The government asserted that the state conviction and sentence rendered the appellant subject to a mandatory minimum recidivist sentence of twenty years if found guilty of the federal drug-conspiracy charge. See 21 U.S.C. § 841(b)(1)(A) (2012).

A jury trial ensued in the district court, and the appellant was convicted of the conspiracy charge on November 9, 2017. The jury found specially that the weight of heroin involved in the conspiracy and attributable to the appellant was one kilogram or more. Within a matter of days, though, the district court notified the parties of a nascent issue involving the residency of Juror No. 127. Insofar as they are pertinent here, we sketch the facts summarized in the court's memorandum:

- Before jury empanelment began, the parties received a packet of information from the district court clerk's office regarding the jury venire. This packet included a jury selection list, compiled by the clerk's office, which recounted each juror's self-reported permanent address (city and state). It also included supplemental questionnaires filled out by the prospective jurors.

- The jury selection list noted, next to the name of Juror No. 127, "Derry NH." In contrast, his supplemental questionnaire indicated that he had

been working in Massachusetts and had been a Massachusetts resident for the last fifteen months.

- Prior to the voir dire, Juror No. 127 spoke with two district court staff members about how to describe his residency. Court staff instructed the juror to address this matter with the judge (which he apparently failed to do).

From aught that appears from the record, neither the parties nor the judge were aware of any problem with Juror No. 127's residency either before or during the trial. The problem came to light only on the final day of the trial (after the jury had returned its verdict and been discharged).[1] When the appellant's counsel reviewed the court's memorandum and belatedly perused Juror No. 127's supplemental questionnaire, he concluded that Juror No. 127 was, in fact, not a resident of New Hampshire at the time of the trial. Rather, Juror No. 127 was a New Hampshire

---

[1] The problem surfaced when Juror No. 127 went to the clerk's office after the verdict had been returned and the jury had been discharged. He explained that he had stayed with his sister (a New Hampshire resident) during the trial; complained that his car was towed from a "resident only" parking spot at his sister's building; and inquired whether the court could resolve his towing charges. In the course of this discussion, court staff realized that Juror No. 127 had no current residence in New Hampshire and alerted the judge. The chief deputy clerk prepared a memorandum summarizing relevant facts, and the judge directed that the parties be notified about the residency issue.

native who had been residing for over a year in neighboring Massachusetts.

Based on this anomaly, the appellant moved for a new trial. See Fed. R. Crim. P. 33. The government opposed the motion, and the district court conducted an evidentiary hearing. The court reserved decision and thereafter, in a thoughtful rescript, denied the appellant's motion. See United States v. Gonzalez, No. 16-cr-162-12-PB, 2018 WL 1936473 (D.N.H. Apr. 24, 2018).

In due course, the district court received the presentence investigation report (the PSI Report). When chronicling the appellant's criminal record and calculating his criminal history score, the PSI Report included the appellant's 1997 New Hampshire conviction for possession of a narcotic drug with intent to sell. The appellant did not object to the inclusion of the 1997 New Hampshire drug conviction in his criminal history, and, predicated on that conviction and the Information previously filed by the government, the PSI Report concluded that the appellant was subject to a twenty-year mandatory minimum recidivist term of immurement. At the disposition hearing, the district court accepted this conclusion and imposed a twenty-year sentence. This timely appeal followed.

**II. ANALYSIS**

The centerpiece of the appellant's asseverational array is his claim that his conviction and sentence must be vacated because the jury that convicted him included a nonresident. The appellant's remaining claims of error are focused on his sentence. We first address his "nonresident juror" claim and then confront his various sentence-related challenges.

A. **The Nonresident Juror Claim**.

The appellant asserts that he is entitled to a new trial because one of the seated jurors was not a New Hampshire resident. This assertion rests on both the Jury Selection and Service Act (JSSA), see 28 U.S.C. § 1865(b)(1), and the Sixth Amendment. The district court denied the appellant's motion for a new trial, rejecting both his statutory and constitutional arguments. In the court's view, the appellant advanced his claim too late and, in all events, could not show any prejudice flowing from the nonresident juror's participation in the trial.

Federal Rule of Criminal Procedure 33 permits a district court to "vacate any judgment and grant a new trial if the interest of justice so requires." We review a denial of a motion for a new trial for abuse of discretion. See United States v. Connolly, 504 F.3d 206, 211 (1st Cir. 2007). Where, as here, the judge who hears the motion for a new trial is the same judge who presided over the trial, substantial deference is due to the judge's perceptions.

- 6 -

See id.; United States v. Natanel, 938 F.2d 302, 313 (1st Cir. 1991).  Of course, a material error of law is always an abuse of discretion.  See Connolly, 504 F.3d at 211.

The JSSA premises eligibility for jury service on, among other things, residency for at least one year in the judicial district in which the trial is to be held.  See 28 U.S.C. § 1865(b)(1).  In this case, though, it is undisputed that Juror No. 127 was not a New Hampshire resident at the time of the trial and, therefore, was not then eligible for jury service in the District of New Hampshire.  Even so, the JSSA requires a defendant to raise any residency issue "before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered" such issue, "by the exercise of diligence . . . whichever is earlier."  Id. § 1867(a); see United States v. Uribe, 890 F.2d 554, 561 (1st Cir. 1989).  This timing requirement serves an eminently practical purpose:  when an objection to a juror's lack of the required residency is made on a timely basis, the court can rectify the situation by the simple expedient of replacing the ineligible juror with an eligible juror.  See United States v. Novod, 923 F.2d 970, 978 (2d Cir.), aff'd in part, rev'd in part on reh'g on other grounds, 927 F.2d 726 (2d Cir. 1991); cf. United States v. Gale, 109 U.S. 65, 69-70 (explaining that when objection regarding juror ineligibility is made timely, "the irregularity might be corrected by reforming the panel").

- 7 -

In this instance, the appellant had available to him — before voir dire — Juror No. 127's supplemental questionnaire. This document clearly indicated that Juror No. 127 was not a New Hampshire resident. But the appellant's counsel neglected to review this form, relying instead on a summary jury selection list that set forth "City & State" for each prospective juror (information extracted from the prospective jurors' self-reported permanent addresses on other forms). Juror No. 127 had reported that his permanent address was in Derry, New Hampshire, so that city and state appeared opposite his name on the jury selection list. And even though the supplemental questionnaire made it plain that Juror No. 127 had been a resident of Massachusetts for at least fifteen months prior to jury empanelment, the appellant's counsel did not object when Juror No. 127 was seated on the jury. It was not until after the verdict was returned that the appellant mounted a residency-based challenge. That was too late, see 28 U.S.C. § 1867(a), and the district court determined that the appellant's challenge was unavailing.

We discern no abuse of discretion. Before voir dire commenced, the appellant's counsel easily could have discovered, through the exercise of due diligence, that Juror No. 127 was not a New Hampshire resident.[2] All that he had to do was review the

_____

[2] Here, as in other contexts, the sins of the lawyer are visited upon the client. See Taylor v. Illinois, 484 U.S. 400,

- 8 -

completed questionnaire that had been given to him.  A party who chooses not to read a document in his possession scarcely can be heard to complain that he was unaware of the contents of the document.  See id. (charging defendant with notice of defect when he "could have discovered" it "by the exercise of diligence"); Uribe, 890 F.2d at 561 (finding waiver when basis for objection could have been gleaned from jury questionnaires available to counsel on motion).

The appellant attempts to sidestep the effects of his waiver.  He suggests that his failure to raise a timely challenge to Juror No. 127's eligibility should be excused because the district court provided inconsistent information about the juror's place of residence; court staff had more information about the juror's residence than did the appellant; and court staff shirked their responsibility of getting to the bottom of the residency issue after Juror No. 127 made an initial inquiry.

The plain language of the statute, though, precludes the appellant from relying on these excuses to overcome his waiver. The JSSA provides that following the statutory procedure (including the timing requirement) constitutes "the exclusive means" for a defendant to raise a challenge to jury composition based on noncompliance with the JSSA.  28 U.S.C. § 1867(e).  In

---

416-18 (1988); Gonzalez v. Banco Cent. Corp., 27 F.3d 751, 762 n.12 (1st Cir. 1994).

comparable contexts, courts consistently have found waiver when defendants failed to comply strictly with JSSA requirements. See, e.g., United States v. Foxworth, 599 F.2d 1, 3 (1st Cir. 1979) (concluding that appellant's "failure to comply with the express statutory requirement . . . precludes his statutory challenge to the jury selection process"); United States v. Marrapese, 610 F. Supp. 991, 997 (D.R.I. 1985) (Selya, J.) ("Under the statutory scheme, § 1867 ministers to the vigilant — not to those who sleep upon their perceptible rights."). This principle holds sway even when — as in this case — the objecting party proffers an excuse based on some idiosyncratic circumstance. See United States v. Hawkins, 566 F.2d 1006, 1013-14, 1013 n.13 (5th Cir. 1978) (explaining why the JSSA should not be interpreted as "impliedly excusing compliance with the timeliness requirement" even when "potential irregularity in the jury selection process" is known to court and government but not to defendant).

We add, moreover, that the appellant's claim under the JSSA is doubly barred: even if the residency glitch had been entirely unknowable prior to verdict, the appellant would still have to carry the burden of establishing prejudice. See Uribe, 890 F.2d at 562. The district court found no prejudice, and its assessment is entitled to substantial deference. See id. The appellant has pointed to nothing that calls the district court's assessment into legitimate question.

The parties agree that, in this case, the existence of prejudice depends on whether there is any good reason to believe that Juror No. 127 may have been biased. Struggling to make such a showing, the appellant argues that Juror No. 127 was less than candid about his residency and, thus, should be deemed biased. But in order to obtain a new trial based on a juror's lack of forthrightness regarding a statutory qualification during voir dire, a party ordinarily must demonstrate harm. See id. In most instances — and this case is no exception — a claim based on a statutorily ineligible juror's lack of candor "reduces to one based on actual or likely bias." Id.

In Sampson v. United States, 724 F.3d 150 (1st Cir. 2013), we addressed the issue of bias when examining a claim that a new trial was required because a seated juror had been dishonest during voir dire. See id. at 163-66. There, we made pellucid that an "inquiry into potential bias . . . . depends on whether a reasonable judge, armed with the information that the . . . juror failed to disclose . . . would conclude under the totality of the circumstances that the juror lacked the capacity and the will to decide the case based on the evidence." Id. at 165-66. Although the Sampson court was dealing with a dishonest juror, see id. at 162-63, the same inquiry applies where a juror is confused or mistaken rather than dishonest, see McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 555-56 (1984) (establishing

- 11 -

impartiality test when juror gave "mistaken, though honest, response" to voir dire question).

It is manifest that a juror's ineligibility, premised on lack of residency, does not, in itself, impair the impartial performance of the juror's duties. See United States v. Haywood, 452 F.2d 1330, 1332 (D.C. Cir. 1971). The appellant has shown nothing more: the record reflects genuine confusion, not outright dishonesty, concerning Juror No. 127's residency. The supplemental questionnaire, which was in the appellant's possession before voir dire, makes it apparent that the juror disclosed that he had been a Massachusetts resident for over a year. What is more, Juror No. 127 spoke to a pair of court employees about the complexities of determining his residency. So, too, Juror No. 127's self-report of a permanent address in Derry, New Hampshire, was not pulled out of thin air: he was a New Hampshire native and had maintained his New Hampshire address to register and insure his motor vehicle, retain his New Hampshire driver's license, and register to vote in that state. He even had instructed his employer to send the confirmations of the periodic direct deposits of his wages to his New Hampshire address. We hold, therefore, that the district court did not abuse its discretion in finding that Juror No. 127 had not intentionally furnished false information.

If more were needed — and we doubt that it is — there is nothing in the record that suggests any actual bias. The district court impliedly found that, apart from his nonresidency, Juror No. 127 was fully qualified to serve. And it found no inkling of bias. We agree that, in light of the totality of the circumstances, neither Juror No. 127's Massachusetts residency nor his mistaken claim of New Hampshire residency would lead a reasonable judge to conclude that he would be unable or unwilling to weigh the evidence even-handedly. Given the absence of anything fairly suggesting bias on Juror No. 127's part, we affirm the district court's determination that the appellant did not suffer any prejudice.

This leaves the appellant's constitutional claim. The Sixth Amendment affords a criminal defendant the right to a fair trial "by an impartial jury of the State and district" in which the crime was committed. U.S. Const. amend. VI. Much like a counterpart claim made under the JSSA, a Sixth Amendment challenge to the impartiality of a jury ordinarily must be proffered in a timely manner. See Novod, 923 F.2d at 978; see also Queen v. Hepburn, 11 U.S. (7 Cranch) 290, 297 (1813) (noting requirement that objection to juror qualification based on residence must be made before juror is sworn).

When a party is aware — or ought to be — of a juror's nonresidence before the trial begins, and does not object timely, he waives his right to complain that seating the juror violates

the Sixth Amendment.  See Novod, 923 F.2d at 978; see also Thornburg v. United States, 574 F.2d 33, 34-36 (1st Cir. 1978) (reaching same result when alleged disqualification was lack of English proficiency).  As discussed above, the appellant's counsel had the supplemental questionnaire indicating Juror No. 127's Massachusetts residency before voir dire but did not interpose a timely objection.  Thus, cloaking the residency issue in the raiment of the Sixth Amendment does not advance the appellant's quest for a new trial.

### B. **Claims of Sentencing Error**.

None of the appellant's four claims of sentencing error were raised below.  Consequently, our review is presumptively for plain error.  See Fed. R. Crim. P. 52(b); United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).  "Review for plain error entails four showings:  (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  Duarte, 246 F.3d at 60.  The appellant, as the proponent of plain error, bears the burden of persuasion on each facet of this quadripartite test. See United States v. Brown, 235 F.3d 2, 4 (1st Cir. 2000).

With this standard in place, we turn to the appellant's claims of error.  We discuss them one by one.

1.  The Vagueness Claim.  The appellant asserts that he should not have been subjected to a twenty-year mandatory minimum recidivist sentence.  Here, though, the appellant was convicted of a felony:  conspiracy to distribute and possess with intent to distribute one kilogram or more of a controlled substance.  And the statute of conviction, as it read at the time, specifically provided that "[i]f any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years."  21 U.S.C. § 841(b)(1)(A) (2012).  Given the appellant's 1997 New Hampshire conviction for possession of a narcotic drug with intent to sell, the mandatory twenty-year term of immurement imposed by the district court appears, on its face, to be appropriate.

The appellant demurs.  To begin, he challenges the mandatory minimum recidivist sentence on the grounds that the term "felony drug offense," as used in section 841, is void for vagueness.  In mounting this challenge, the appellant relies heavily on the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015), which held that the residual clause defining "violent felony" in the Armed Career Criminal Act offended the Due Process Clause.  See id. at 2563.

The residual clause defined "violent felony" as an offense that "otherwise involves conduct that presents a serious

- 15 -

potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii) (2012). The Court concluded that this definition was void for vagueness because it required judges to look beyond the elements of a crime and examine "a judicially imagined 'ordinary case' of a crime" rather than "real-world facts or statutory elements." Johnson, 135 S. Ct. at 2557. That process, the Court stated, not only left "grave uncertainty about how to estimate the risk posed by a crime" but also left "uncertainty about how much risk it takes for a crime to qualify as a violent felony." Id. at 2557-58. To shore up this argument, the appellant cites to other Supreme Court cases that held residual clauses defining the term "crime of violence" void for vagueness. See United States v. Davis, 139 S. Ct. 2319, 2336 (2019); Sessions v. Dimaya, 138 S. Ct. 1204, 1216 (2018).

Building on this foundation, the appellant strives to persuade us that the term "felony drug offense" is void for vagueness because, as he envisions it, judges must look beyond the statutory elements of the charged crime in order to determine whether a prior conviction qualifies as a predicate. We are not convinced. As Congress has employed the term, a "felony drug offense" is "an offense that is punishable by imprisonment for more than one year . . . that prohibits or restricts conduct relating to . . . drugs." 21 U.S.C. § 802(44). In attempting to

draw a parallel to the <u>Johnson</u> line of cases, the appellant focuses on Congress's use of the word "conduct." This focus is misplaced.

A federal law violates the Due Process Clause only if it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." <u>Johnson</u>, 135 S. Ct. at 2556. We think it plain that "felony drug offense," as used in section 841, is neither vague nor standardless. Its definition and application require asking no more than three simple questions. <u>See</u> 21 U.S.C. §§ 802(44), 841(b)(1)(A). Those questions are: (1) Was there a prior conviction? (2) Was that conviction for a felony (that is, for an offense punishable by a year or more in prison)? and (3) Was that conviction for an offense that "prohibits or restricts conduct relating to" drugs, <u>id.</u> § 802(44)? All three of these questions have objectively ascertainable answers, and answering them requires nothing more than examining the statute of conviction. So long as these answers are all in the affirmative, the offense qualifies as a "felony drug offense" for the purpose of triggering the mandatory minimum. Seen in this light, the statute affords fair notice of the conduct leading to the sentencing enhancement, and the necessary analysis is not plagued by the need for judicial imagination and hypothesis that concerned the <u>Johnson</u> Court.

The cases cited by the appellant do not deal either with the statutory provision at issue here or with any analogous

provision.  See Davis, 139 S. Ct. at 2324; Dimaya, 138 S. Ct. at 1210-11; Johnson, 135 S. Ct. at 2555-56.  Put bluntly, their holdings are inapposite.  In the absence of any on-point authority, there is no principled way for us to say that the district court committed a clear or obvious error in treating the statute as constitutional and following its dictates to impose a mandatory minimum recidivist sentence.  See United States v. Morosco, 822 F.3d 1, 21 (1st Cir. 2016) (concluding that challenged ruling "[wa]s not within a country mile of plain error" when no controlling precedent existed); United States v. Caraballo-Rodriguez, 480 F.3d 62, 73 (1st Cir. 2007) ("[S]ince we have not yet adopted the [statutory] construction [that the appellant] urges, there is no plain error.").  We conclude, therefore, that the appellant's vagueness claim lacks force.

2. The Section 851(b) Claim.  The appellant next argues that we must vacate his sentence because the district court did not comply with certain statutory prerequisites prior to imposing the mandatory minimum recidivist term of immurement.  Specifically, he complains that the court did not engage in a colloquy with him inquiring whether he affirmed the prior conviction and advising him that any challenge to it must be raised before sentencing.  See 21 U.S.C. § 851(b).

21 U.S.C. § 851 delineates the procedures for seeking and imposing an enhanced recidivist sentence.  First, the

- 18 -

government must "file[] an information with the court . . . stating in writing the previous convictions to be relied upon." Id. § 851(a)(1). The government did so here. Next, the court must "inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged" and "inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised." Id. § 851(b). It is undisputed that the court below failed to engage in such a colloquy.

Section 851(c) prescribes the procedures by which a defendant may seek to challenge a prior conviction — procedures that the appellant did not follow. Another statutory provision further limits a defendant's ability to challenge past convictions. See id. § 851(e) (prohibiting "challenge[s] [to] the validity of any prior conviction . . . which occurred more than five years before the date of the information").

Before reaching the merits of the appellant's argument, a threshold matter looms. Despite conceding that he did not object to the absence of the required colloquy in the district court, the appellant nonetheless protests the appropriateness of plain error review. Remarking that section 851(b) places the onus on the district court to inform a defendant of his right to affirm or deny a prior conviction, the appellant asserts that it makes no sense to require him to object contemporaneously to the court's

failure to provide the required warning.  He exhorts us instead to review the absence of the required colloquy for harmless error, not plain error.  See United States v. Lopez, 907 F.3d 537, 547-48 (7th Cir. 2018), cert. denied, 139 S. Ct. 1612 (2019); United States v. Baugham, 613 F.3d 291, 295-96 (D.C. Cir. 2010) (per curiam).

The appellant's standard-of-review argument runs headlong into the law of the circuit doctrine.  As a general matter, that doctrine commands our adherence to our own prior panel decisions.  See, e.g., United States v. Barbosa, 896 F.3d 60, 74 (1st Cir.), cert. denied, 139 S. Ct. 579 (2018); United States v. Rodríguez, 527 F.3d 221, 224 (1st Cir. 2008); United States v. Lewis, 517 F.3d 20, 23 (1st Cir. 2008).  Unless a litigant can fit his case into one of the narrow exceptions to this doctrine,[3] prior circuit precedent controls.  See Barbosa, 896 F.3d at 74.

Here, none of the exceptions applies, and our prior circuit precedent teaches that we must review previously unraised claims regarding a district court's failure to conduct a section 851(b) colloquy for plain error.  See United States v. Curet, 670

---

[3] We have said that "the exceptions to the law of the circuit doctrine are narrowly circumscribed and their incidence is 'hen's-teeth-rare.'"  Barbosa, 896 F.3d at 74 (quoting San Juan Cable LLC v. P.R. Tel. Co., 612 F.3d 25, 33 (1st Cir. 2010)).  For instance, an exception pertains "when the holding of a previous panel is contradicted by subsequent controlling authority, such as a decision by the Supreme Court, an en banc decision of the originating court, or a statutory overruling."  Id.

F.3d 296, 300 (1st Cir. 2012) ("We review failure to conduct a § 851(b) colloquy for harmless error where there is an objection, and for plain error in the absence of an objection."); United States v. Dickerson, 514 F.3d 60, 64-65, 65 n.4 (1st Cir. 2008). Accordingly, we are bound to review the appellant's section 851(b) claim for plain error.

The appellant says that plain error occurred simply because the district court failed to adhere to the procedure limned in 21 U.S.C. § 851(b). The relevant facts are not in dispute: the district court neither made the required inquiry nor informed the appellant of the limited time available within which to challenge the prior conviction. Even so, the appellant's argument faces an insurmountable obstacle: his predicate conviction occurred some twenty years before the date of the Information in this case, and statutory law forecloses challenges to the validity of convictions that are more than five years old. See 21 U.S.C. § 851(e); see also Dickerson, 514 F.3d at 65. Thus, even though the section 851(b) colloquy was omitted, the appellant cannot demonstrate that its omission in any way affected his substantial rights. See United States v. Romero-Carrion, 54 F.3d 15, 18 (1st Cir. 1995). Plain error is plainly absent: the district court's

error was harmless, and a harmless error cannot be a plain one.[4] See Dickerson, 514 F.3d at 65.

There is one loose end. The appellant suggests that even though he could not challenge the validity of the 1997 conviction, he could still have challenged allegations in the Information by following the procedure outlined in section 851(c). See 21 U.S.C. § 851(c)(1). This is true as far as it goes — but it does not take the appellant very far. Neither in any filing in the district court nor in his appellate briefing did he raise any viable challenge to any specific allegation in the Information. The mere possibility that such a challenge might be open to him does not, without more, support a finding of plain error.

At oral argument in this court, the appellant's appellate counsel attempted to fill this void. She suggested that the appellant may not have been the same "Alfredo Gonzalez" who was convicted in the 1997 New Hampshire drug case. This belated suggestion, presented without either an affidavit from the appellant or any other shred of documentation, is too little and too late. See id. § 851(c)(2); cf. United States v. Serrano-Mercado, 784 F.3d 838, 847 (1st Cir. 2015) (recognizing that

---

[4] Given this conclusion, it is nose-on-the-face plain that the standard of review makes no meaningful difference in this instance. Because the section 851(b) error was patently harmless, the appellant's claim of error would founder even under his preferred standard of review.

defendant in categorical case who does not tender <u>Shepard</u> documents on appeal "could not meet the heightened prejudice showing plain error review requires"). And this suggestion strikes a particularly dissonant chord inasmuch as the appellant did not object to the inclusion of this conviction in his criminal history (as recounted in the PSI Report). And if, despite this seeming admission, he actually wishes to make and pursue a "not me" claim, he may do so by means of a petition for post-conviction relief, accompanied by appropriate documentation, under 28 U.S.C. § 2255.

Battling on, the appellant's counsel suggests that "[b]ased on the scant details in the information, it is unclear even whether the prior conviction was a felony." This suggestion elevates hope over reason. A "felony drug offense" is one that is "punishable by imprisonment for more than one year under any law . . . of a State . . . that prohibits or restricts conduct relating to . . . drugs." 21 U.S.C. § 802(44). Here, the record makes manifest that the prison sentence received by the appellant in the New Hampshire drug case was for substantially more than one year. To cinch the matter, the nature of the offense — possession of a narcotic drug with intent to sell — indicates just as clearly that the conviction was for an offense "that prohibits or restricts conduct relating to narcotic drugs." <u>Id.</u>; <u>see</u> <u>United States</u> v. <u>Burghardt</u>, 939 F.3d 397, 406-09 (1st Cir. 2019) (holding that violation of N.H. Rev. Stat. Ann. § 318-B:2(I) is categorically a

"serious drug offense" under 18 U.S.C. § 924(e)(2) — holding that forecloses any argument that it is not a "felony drug offense" under the more broadly worded 21 U.S.C. § 802(44)).

That ends this aspect of the matter. We conclude that the district court's error in failing to conduct the required section 851(b) colloquy was harmless and that, therefore, the appellant's assignment of error fails.

3. The Apprendi Claim. As a further fallback, the appellant submits that using his 1997 New Hampshire drug conviction as the foundation for the twenty-year mandatory minimum recidivist sentence transgressed his Fifth and Sixth Amendment rights. In support, he points out that the federal indictment did not itself allege the prior conviction, nor did the government prove the fact of the conviction beyond a reasonable doubt. See Apprendi v. New Jersey, 530 U.S. 466, 490 (2000).

In Apprendi, the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. Apprendi, however, is not the Court's controlling precedent on the question of when a prior conviction may be used to enhance a defendant's sentence. "[T]he Supreme Court's decision in Almendarez-Torres v. United States, 523 U.S. 224 (1998), fairly construed, established that a sentencing enhancement may be grounded on prior criminal convictions neither separately charged

nor proven to a jury."  United States v. Richards, 456 F.3d 260, 262 (1st Cir. 2006).  Since Almendarez-Torres has neither been overruled nor abrogated by the Supreme Court, we are bound by its specific holding.  See id.

In an effort to blunt the force of this reasoning, the appellant says that later Supreme Court decisions intimate that the Justices may be prepared to disavow Almendarez-Torres.  See, e.g., United States v. Haymond, 139 S. Ct. 2369, 2376-79 (2019); Alleyne v. United States, 570 U.S. 99, 103 (2013); see also Apprendi, 530 U.S. at 520-21 (Thomas, J., concurring).  But we are not at liberty to browse through these tea leaves and vaticinate what future holdings the Supreme Court may (or may not) make.  Where, as here, a Supreme Court decision applies directly to a case before us yet arguably depends on a rationale called into question by a later decision, we must still follow the decision that directly applies.  See Agostini v. Felton, 521 U.S. 203, 237 (1997); Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484 (1989).  Consequently, we reject the appellant's Apprendi challenge to his mandatory minimum recidivist sentence.  The district court hardly could have committed plain error by adhering to binding Supreme Court precedent.

4.  The First Step Act Claim.  On December 21, 2018, Congress enacted the First Step Act of 2018 (the Act), Pub. L. No. 115-391, 132 Stat. 5194 (to be codified in scattered sections of

18, 21, and 34 U.S.C.). Section 401(a)(2)(A)(i) of the Act amended the statute of conviction to reduce the mandatory minimum sentence applicable for this crime from twenty years to fifteen years. See § 401, 132 Stat. at 5220 (to be codified at 21 U.S.C. § 841(b)(1)). The appellant contends that this reduction of the mandatory minimum sentence should be applied retroactively to his behoof. To undergird this contention, he notes that the Act became law while his appeal was pending.

We do not write on a pristine page. Section 401(c) of the Act states precisely when and to what extent the Act's provisions apply to pending cases. See id. at 5221. Pertinently, "[t]his section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." Id. (emphasis supplied).

The appellant acknowledges that the district court sentenced him prior to the December 21, 2018, effective date. He nonetheless asserts that when "a defendant is appealing the sentence, it cannot yet be considered final." And because the sentence is not yet final, his thesis runs, it has not yet been "imposed," and the Act's reduced mandatory minimum should apply to him.

The appellant's contention conflates finality with imposition, and the Act's plain language defeats it. The word

- 26 -

"imposed" is not specially defined in the Act, and we therefore give that word its ordinary meaning. See United States v. Gordon, 875 F.3d 26, 33 (1st Cir. 2017); Stornawaye Fin. Corp. v. Hill (In re Hill), 562 F.3d 29, 32 (1st Cir. 2009). A sentence is customarily understood to be imposed either when it is pronounced or entered in the trial court, regardless of subsequent appeals. See United States v. Pierson, 925 F.3d 913, 927 (7th Cir. 2019) ("In common usage in federal sentencing law, a sentence is 'imposed' in the district court, regardless of later appeals."), petition for cert. filed, — U.S.L.W. — (U.S. Oct. 28, 2019) (No. 19-566); United States v. Davis, 924 F.3d 899, 905 n.4 (6th Cir. 2019) (observing that sentence is imposed when it is orally pronounced); see also United States v. Burgos-Andújar, 275 F.3d 23, 32 n.6 (1st Cir. 2001) (indicating that First Circuit "has not decided" precisely "when a sentence is imposed" but noting that choice is between oral pronouncement of sentence and trial court's entry of judgment); Fed. R. Crim. P. 35 advisory committee's note to 2004 amendment (advocating oral announcement as sentencing date). We need not decide today whether a sentence is imposed on the date of its pronouncement or on the date of entry of judgment; either way, the sentence is imposed before an appeal from that sentence can be taken.

In the case at hand, the appellant's sentence was imposed in June of 2018[5] — several months before the Act was passed — so the appellant cannot reap the benefit of the Act's reduction of the mandatory minimum.  His claim of error is, therefore, hopeless.

**III. CONCLUSION**

We need go no further.  For the reasons elucidated above, the judgment of the district court is

**Affirmed.**

---

[5] The court below orally pronounced the appellant's sentence on June 14, 2018.  The judgment was entered on the district court's docket the next day.